IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
EVELYN SYKES                            )
3930 Blaine Street, NE                  )
Washington, DC  20019,                  )
                        Plaintiff,      )
                                        )
v.                                      )
                                        )
DISTRICT OF COLUMBIA                    )
One Judiciary Square                    )
441 Fourth Street, NW                   )
Washington, DC  20001,                  )
                        Defendant.      )
_____)
```

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Evelyn Sykes, on behalf of her minor ward D.B. and through undersigned counsel, for her complaint herein alleges as follows:

**INTRODUCTION**

1. This is a claim for injunctive relief brought under the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The Plaintiff seeks a judgment: 1) ordering the Defendant to fund D.B.'s placement at Rock Creek Academy; 2) declaring that DCPS violated the IDEA by failing to provide D.B. with an appropriate educational placement since November 12, 2004; 3) declaring that DCPS violated the IDEA by failing to provide him with specialized instruction since November 12, 2004; and 4) ordering DCPS to convene a multidisciplinary team meeting to develop a compensatory education plan to compensate D.B. for harm done him by those violations.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, in that the action arises under the laws of the United States. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2).

3. The Plaintiff has participated in an impartial administrative hearing conducted by the District of Columbia Schools State Enforcement and Investigation Division. The Hearing Officer granted the Plaintiff some of her requested relief and denied her the rest.

**PARTIES**

4. Evelyn Sykes is the adult guardian of D.B., a twelve-year-old boy. Ms. Sykes and D.B. reside together in Washington, DC.

5. The District of Columbia is a municipality that receives federal financial assistance in exchange for providing special education and related services to children with disabilities.

6. The District of Columbia Public Schools ("DCPS") is an agency of the District of Columbia.

**FACTS**

7. A January 15, 2003 psychiatric evaluation of D.B. diagnosed him with Attention-Deficit/Hyperactivity Disorder ("ADHD"), NOS and Fetal Alcohol Syndrome, and recommended placement in "year-round, structured, therapeutic school program . . . [with] a smaller classroom."

8. A June 4, 2004 occupational therapy evaluation of D.B. recommended that "[t]he team . . . should reconsider his school placement . . .[in favor of] a year round, structured,

therapeutic school program to include a small classroom environment and a behavior management program."

9. An August 7, 2004 academic skills screening report regarding D.B. stated that that he has "significant emotional, ADHD and specific learning disabilities, and that his "Emotional Disorders, ADHD and learning disabilities necessitate that he be provided a small class (1:8 teach: student ratio) in a year-round therapeutic setting."

10. An April 25, 2005 clinical psychological evaluation of D.B. diagnosed him with ADHD and Depressive Disorder and noted that he "may qualify for special education and related services as a student with an Emotional Disturbance."

11. DCPS developed individualized education programs ("IEPs") for D.B. on May 19, 2004, May 24, 2005, and May 9, 2006.

12. None of the IEPs of May 19, 2004, May 24, 2005, and May 9, 2006 was appropriate for D.B.

13. On September 17, 2003, DCPS placed D.B. at Kimball Elementary School ("Kimball"), in a "combination" general education and special education setting.

14. On May 12, 2004, DCPS renewed its placement of D.B. at Kimball, in a combination setting.

15. On May 24, 2005, DCPS renewed its placement of D.B. at Kimball, in a combination setting.

16. On May 9, 2006, DCPS changed D.B.'s placement to Kelly Miller Middle School ("Kelly Miller"), in a combination setting, effective the 2006-2007 school year.

17. DCPS's placement of D.B. at Kimball was never reasonably tailored to provide him with educational benefit.

18.	Kimball did not provide D.B. with educational benefit.

19.	DCPS's placement of D.B. at Kelly Miller was not and is not reasonably tailored to provide him with educational benefit.

20.	Kelly Miller has not provided D.B. with educational benefit.

21.	On May 12, 2004, DCPS issued to the Plaintiff a document entitled "Prior to Action Notice."

22.	DCPS has issued no document other that the May 12, 2004 document identified above, intended to serve as a "prior notice," as that term is used in 20 U.S.C. § 1415, related to the continuation of its placement of D.B. at Kimball for the 2004-2005 school year.

23.	The only explanation for the placement stated in the May 12, 2004 "Prior to Action Notice" is the statement: "Continued services in combination general and special education as a student with ED."

24.	In the May 12, 2004 "Prior to Action Notice," the only description of options other than placement at Kimball and the reasons why those options were rejected is as follows: "Out of general education rejected due to negative impact on self-esteem, overly restrictive. In general education does not meet the student's needs."

25.	The May 12, 2004 "Prior to Action Notice" does not contain a description of any evaluation procedure, assessment, record, or report DCPS used as a basis for the placement.

26.	The May 12, 2004 "Prior to Action Notice" does not contain a description of the factors relevant to DCPS' decision to continue the placement at Kimball other than the statements quoted above.

27.     On May 24, 2005, DCPS issued to the Plaintiff a document entitled "Prior to Action Notice."

28.     DCPS has issued no document other that the May 24, 2005 document identified above, intended to serve as a "prior notice," as that term is used in 20 U.S.C. § 1415, related to the continuation of its placement of D.B. at Kimball for the 2005-2006 school year.

29.     The only explanation for the placement stated in the May 24, 2005 "Prior to Action Notice" is the statement: "Based on the documentation and team discussion [D.B.'s] disability was changed from ED to MD(LD/OHI) He requires specialized instruction and related services in a combination setting."

30.     In the May 24, 2005 "Prior to Action Notice," the only description of options other than placement at Kimball and the reasons why those options were rejected is as follows: "Placement in general ed was rejected."

31.     The May 24, 2005 "Prior to Action Notice" does not contain a description of any evaluation procedure, assessment, record, or report DCPS used as a basis for the placement.

32.     The May 24, 2005 "Prior to Action Notice" does not contain a description of the factors relevant to DCPS' decision to continue the placement at Kimball other than the statements quoted above.

33.     On May 9, 2006, DCPS issued to the Plaintiff a document entitled "Prior to Action Notice."

34. DCPS has issued no document other that the May 9, 2006 document identified above, intended to serve as a "prior notice," as that term is used in 20 U.S.C. § 1415, related to its change of D.B.'s placement from Kimball to Kelly Miller.

35. The only explanation for the placement change stated in the May 9, 2006 "Prior to Action Notice" is the statement: "The MDT convened and determined [D.B.] continues to be eligible for special education services requiring a combination setting, specialized instruction and related services."

36. In the May 9, 2006 "Prior to Action Notice," the only description of options other than placement at Kelly Miller and the reasons why those options were rejected is as follows: "The MDT rejects placement in general education."

37. The May 9, 2006 "Prior to Action Notice" does not contain a description of any evaluation procedure, assessment, record, or report DCPS used as a basis for the placement change.

38. The May 9, 2006 "Prior to Action Notice" does not contain a description of the factors relevant to DCPS' decision to change D.B.'s placement other than the statements quoted above.

39. DCPS did not provide D.B. with specialized instruction from November 12, 2004 through June 16, 2006.

40. On June 16, 2006, the Plaintiff filed an administrative "due process complaint" against DCPS pursuant to the IDEA.

41. The due process complaint alleged, *inter alia*, that DCPS had violated the IDEA by failing "to provide an appropriate placement since the start of the 2003-2004 SY," and

6

failing "to provide necessary special education and related services since the start of the 2003-2004 SY."

42.     The due process complaint further alleged, *inter alia,* as follows: "DCPS placed [D.B.] at Kimball for the 2003-2004, 2004-2005, and 2005-2006 SYs....Kimball ES has never been an appropriate placement for [D.B.]....[D.B.] did not receive all of the special education and related services prescribed in his September 13, 2003 or May 19, 2004 IEPs....[D.B.] did not receive the special education and related services prescribed in his May 24, 2005 IEP....DCPS' proposed placement at Kelly Miller MS is not appropriate."

43.     DCPS never filed a notice of insufficiency regarding the Plaintiff's due process complaint.

44.     On June 24, 2006, DCPS sent a document to the Petitioner entitled "District of Columbia Public School's Response to Due Process Complaint Notice" ("Response").

45.     DCPS has issued no document other than the June 24, 2006 Response intended by DCPS to serve as a response to the Plaintiff's due process complaint, as the term "response" is used in 20 U.S.C. § 1415(c)(2)(B)(i)(I).

46.     Excluding the letterhead, caption, signature, certificate of service and other such non-substantive terms, and excluding a footnote, the entirety of the text of the Response is as follows:

> The District of Columbia Public Schools (hereinafter "DCPS"), by and through the undersigned Attorney-Advisor, hereby provides its RESPONSE to the Administrative Due Process Complaint Notice (hereinafter "Complaint") filed on behalf of the above captioned student, pursuant to the Individuals with Disabilities Education Improvement Act (hereinafter "IDEIA"), 20 U.S.C. § 1415(c)(2)(B)(i)(I). DCPS responds as follows:
>     a.     DCPS **DENIES**, in general, all allegations contained in the complaint and intends to defend against the complaint;

  b. DCPS **DENIES** the allegation that it failed to provide an appropriate IEP. DCPS contends that the IEP was made in accordance with 5, DCMR 3007 and 3009.
  c. DCPS **DENIES** the allegation that it failed to identify this child as a child with a disability. DCPS contends that the identification was made in accordance wtih 5 DCMR 3005.
  d. DCPS **DENIES** the allegation that it failed to provide an appropriate placement. DCPS contends that the placement was made in accordance with 5 DCMR 3013.
  e. DCPS **DENIES** the allegation that it failed to complete timely and comprehensive evaluations. DCPS contends that it appropriately evaluated the child in all areas of suspected disability;
  f. DCPS **DENIES** the allegation that it violated the "child find" requirement. DCPS contends that it had no reason to suspect this was a child in need of special education services.
  g. DCPS **DENIES** the allegation that it failed to provide appropriate special education and related services. The allegation is too vague upon which a more specific answer can be given.
  h. DCPS did not issue an MDT Prior to Action Notice. DCPS did not issue a Prior to Action Notice in this case because the allegations within the complaint fail to allege that the agency has proposed or refused to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education to the child, pursuant to IDEIA, § 615(b)(3).
  i. DCPS maintains that all other allegations stated within the petitioner's complaint require no further prior written notice for the reasons stated above.

47. The Response also contained one footnote, which stated as follows:

It is this attorney-advisor's position that a DCPS response is not required in all IDEIA Due Process Hearings.  Accordingly, DCPS objects to such an expansive reading and practice.  The purpose of the prior written notice requirements of the IDEIA is to inform the parents in writing of an agency's final action on a proposal or refusal to initiate or change the identification, evaluation, educational placement or the provision of FAPE (procedural safeguards and special education and related services) to a particular student.  If a team (e.g., MDT or IEP team) cannot reach consensus or if the parents do not attend the team meeting, the public agency must provide the parents with prior written notice of the agency's proposals and/or refusals.  If consensus between the public agency and the parent cannot be reached, prior written notice of proposed or refused actions must be provide [sic] to the parents, even if the parents participated in the meeting where the decision(s) was made.  Excerpt of Memorandum from the Office of Special Education for the West Virginia Department of Education, dated, June 24, 2004, re: IDEA 2004 Interim Implementation – Prior Written Notice.

8

48. On June 28, 2006, the Plaintiff filed "Petitioner's Amended Motion for Entry of Default and Default Judgment" ("Default Motion") in the administrative case.

49. In the Default Motion, the Plaintiff requested a default judgment on all claims in her due process complaint "[b]ecause the Respondent has not filed an adequate response in this case."

50. The Plaintiff filed the Default Motion at 9:47 a.m..

51. At 1:49 p.m. on June 28, 2006, an order was issued in the administrative case denying the Default Motion.

52. The only explanation contained in the order denying the Default Motion is the statement: "No procedural violations alleged per 20 U.S.C. 1415(f)(3)(E)(ii) that would warrant a default judgment. See *Lesesne v. District of Columbia,* U.S. Court of Appeals, D.C. Circuit, No. 05-7123."

53. Prior to the administrative hearing on the Plaintiff's due process complaint, DCPS sent a "disclosure letter" regarding that hearing in which DCPS identified at least one member of the Kelly Miller staff as a potential witness at the hearing.

54. On August 23, 2006, the due process complaint was heard at an administrative "due process hearing" ("Hearing").

55. On August 31, 2006, the Plaintiff filed a Supplemental Memorandum to the Hearing of August 23, 2006 ("Memorandum").

56. DCPS did not file any pleadings or documents at the administrative level after the hearing.

57. In the Memorandum, the Plaintiff stated, *inter alia*, that "[n]one of the Petitioner's other claims – including claims regarding education since 2004 and, most noticeably, the

9

claim that DCPS has not offered an appropriate placement for the 2006-2007 SY – are affected by the prior HODs."

58.     On September 15, 2006, the DCPS State Enforcement and Investigation Division issued a Hearing Officer Decision ("HOD") on the Plaintiff's due process complaint.

59.     In the HOD, the Hearing Officer found that DCPS had denied D.B. a free appropriate public education ("FAPE") by failing to provide an appropriate IEP for him since December 2004.

60.     In the HOD, the Hearing Officer found that DCPS had not provided D.B. with all prescribed counseling services during the 2004-2005 and 2005-2006 school years, but declined to find that DCPS had not provided all prescribed specialized instruction.

61.     In the HOD, the Hearing Officer declined to find that DCPS had not provided D.B. with an appropriate school placement for the 2004-2005 and 2005-2006 school years.

62.     In the HOD, the Hearing Officer refused to rule on the legality and appropriateness of DCPS' placement of D.B. at Kelly Miller for the 2006-2007 school year because "the original complaint did not allege the student's 2006-07 placement at Kelly Miller was inappropriate such that DCPS was required to prove the appropriateness of Kelly Miller."

63.     In the HOD, the Hearing Officer found that "[t]he parent was told at the [May 2006] meeting that the student's placement for SY 2006-2007 would be Kelly Miller," but that "[t]here was no one at the May 2006, MDT meeting to discuss Kelly Miller as the placement."

64. On September 27, 2006, the Plaintiff filed a Motion for Reconsideration requesting that the Hearing Officer reconsider his ruling regarding the 2006-2007 school year.

65. In her Motion for Reconsideration, the Plaintiff stated facts as follows:

> [T]he Petitioner's Complaint alleged generally DCPS' failure to provide an appropriate placement and specifically the inappropriateness of Kelly Miller. The Complaint alleged DCPS' "[f]ailure to provide an appropriate placement since the start of the 2003-2004 SY." Complaint at 1. It further states: "At a May 9, 2006 MDT meeting, DCPS...issued a prior notice placing [D.B.] at Kelly Miller Middle School ("Kelly Miller MS") for the 2006-2007 SY[.]...DCPS' proposed placement at Kelly Miller MS is not appropriate." Complaint at 3. Additionally, the Petitioner made clear her case regarding the current placement at the Hearing, when she presented testimony regarding DCPS's failure to properly propose Kelly Miller, requested immediate placement to Rock Creek Academy, and presented testimony and argument regarding Rock Creek Academy's appropriateness.
>
> The Petitioner clearly stated her claim that the 2006-2007 placement was inappropriate. DCPS clearly failed to address that claim in any way. DCPS' Response to the Complaint is completely silent on the issue of Kelly Miller. In its disclosure letter, DCPS identified a potential witness from Kelly Miller, but at the Hearing DCPS declined to call that witness. DCPS declined to file any closing brief as directed by the Hearing Officer. In short, DCPS put on no case whatsoever that Kelly Miller is an appropriate placement.
>
> As the Hearing Officer noted in the HOD, DCPS bore the burden of proof in this case. *See* HOD at 6. DCPS utterly failed to meet that burden. Moreover, as the Hearing Officer noted in the HOD, no one has ever described the Kelly Miller program to the Petitioner or presented to the Petitioner any reason to believe that it is appropriate for [D.B.]. *See* HOD at 4. For those reasons, the Hearing Officer should therefore rule that Kelly Miller is not an appropriate placement for [D.B.], and that DCPS has denied [D.B.] FAPE by failing to determine an appropriate placement for the 2006-2007 school year.

66. DCPS filed no opposition to the Plaintiff's Motion for Reconsideration.

67. On November 3, 2006, the Hearing Officer issued an order denying the Motion for Reconsideration.

## COUNT I: FAILURE TO PROVIDE FREE APPROPRIATE PUBLIC EDUCATION

68. The allegations of Paragraphs 1-66 above are incorporated herein as if repeated verbatim.

69. The IDEA requires DCPS to provide all children with disabilities in its jurisdiction free appropriate public education ("FAPE").

70. DCPS' failures to provide D.B. with an appropriate educational placement and to provide him with all necessary instruction and services have denied and continue to deny D.B. his right to FAPE under the IDEA.

71. As a result of this denial, D.B. has experienced and continues to experience harm to his educational development.

WHEREFORE, the Plaintiff respectfully requests that this Court:

1) order the Defendant to fund D.B.'s placement at Rock Creek Academy;
2) declare that DCPS violated the IDEA by failing to provide D.B. with an appropriate educational placement since November 12, 2004;
3) declare that DCPS violated the IDEA by failing to provide him with specialized instruction since November 12, 2004;
4) order DCPS to convene a multidisciplinary team meeting to develop a compensatory education plan to compensate D.B. for harm done him by DCPS' violations of the IDEA;
5) award the Plaintiff attorneys' fees and costs of this action;
6) award any other relief the Court deems just.

13

        Respectfully submitted,


        _____
        Douglas Tyrka, #467500
        Tyrka & Associates, LLC
        1726 Connecticut Ave., NW, Suite 400
        Phone:  (202) 265-4260
        Fax:  (202) 265-4264

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Evelyn Sykes
on behalf of her minor ward, D. B.

11001

## DEFENDANTS

District of Columbia

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)
11001

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Douglas Tyrka
Tyrka & Associates, LLC
1726 Connecticut Ave NW
Suite 400
Washington, DC 20009

CASE NUMBER 1:07CV00255
JUDGE: Royce C. Lamberth
DECK TYPE: Administrative Agency Rev
DATE STAMP: 02/  /2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (FOR PLAINTIFF...)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⊙ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes:
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ✓ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
IDEA claim for injunction (private placement) and declaratory judgment. 20 U.S.C. sec. 1400 et seq.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____  JURY DEMAND: YES ☐ NO ☐  Check YES only if demanded in complaint

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☐   If yes, please complete related case form.

DATE 02/01/07    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.