## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EVELYN SYKES, Guardian and Next Friend of D.B., a Minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-0255 (RCL) |
| DISTRICT OF COLUMBIA, A municipal corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

## <u>DEFENDANT DISTRICT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, the Defendant District of Columbia, by counsel, here moves for summary judgment in this matter. The basis for this motion is that Plaintiff's challenge to the Hearing Officer's Determination in this case lacks merit because there was nothing improper in that decision.

A memorandum of points and authorities, a statement of material facts as to which there is no genuine issue, and a proposed order are attached hereto.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

June 29, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EVELYN SYKES, )<br>Guardian and Next Friend of D.B., a Minor, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>DISTRICT OF COLUMBIA, )<br>A municipal corporation, )<br> )<br>Defendant. )<br> | Civil Action No. 07-0255 (RCL) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Plaintiff brought this action to appeal a District of Columbia Public Schools ("DCPS") Hearing Officer's Decision ("HOD"), issued on September 15, 2006, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.* ("IDEIA"). The Plaintiff also challenged a subsequent November 3, 2006, HOD, denying the Plaintiff's Motion for Reconsideration. At issue in this case, is the appropriateness of D.B.'s placement and individualized education programs ("IEPs") during the 2004-2005 and 2005-2006 school years ("SYs").

Under the IDEIA, disabled students are entitled to a free, appropriate public education ("FAPE"). 20 U.S.C § 1412(a)(1). An IEP team, consisting of the disabled student's parents, teachers, and other educational specialists, meet and confer in a collaborative process to determine how best to accommodate the needs of the student to provide a FAPE. 20 U.S.C. §1414(d)(1)(B). The IEP is the written statement from the

meeting that includes, among other things, goals and instructional objectives, services to be provided, projections regarding the dates when such services will be offered, and criteria for evaluating whether instructional objectives are being met. 20 U.S.C. §1414(d)(1)(A); 20 USCS § 1401(14). The IEP team also must make decisions regarding the student's educational placement. 20 U.S.C. § 1412(a)(5)(A). Following an IEP meeting, the school system will issue a prior notice of placement to a school that can implement the IEP. 20 U.S.C. § 1415(c)(1). Should the parent disagree with that placement selection (or any other aspects of the IEP), she can seek a due process hearing. 20 U.S.C. § 1415(c)(2) and (f).

## STANDARD OF REVIEW

### I.    Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *Id*.; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B). When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997). Factual determinations of the hearing officer are to be accorded due weight.

## II.    Review of administrative decisions under the IDEIA.

The IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(i)(2)(A). In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them." *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect. *Angevine v. Smith*, 292 U.S. App. D.C. 346, 959 F.2d 292, 295 (1992); *Kerkam v. McKenzie*, 274 U.S. App. D.C. 139, 862 F.2d 884, 887 (1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993). While

the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons*, 829 F. Supp. at 418. This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. *Rowley*, 458 U.S. at 207-08. Accordingly, this Court must give the hearing officer's determination "due weight," and Plaintiff, in order to prevail, must show by a "preponderance of the evidence" that the hearing officer was wrong.

Because the subject HOD was appropriate in all respects challenged by the Plaintiff, she cannot make the required showing, and summary judgment should be granted to the Defendant.

## STATEMENT OF THE RELEVANT FACTS

D.B is a twelve-year old resident of the District of Columbia, who has been determined eligible for special education and related services. Administrative record, filed May 29, 2007, page 16 (citations to the administrative record will hereinafter appear "R. at _____"). At the time of the September 15, 2006, HOD challenged in this suit, D.B. had just completed his final year at Kimball Elementary School, a school within the DCPS system which he had attended since 2003. R. at 16.

In January of 2003, a psychiatric evaluation diagnosed D.B. with Attention Deficit Hyperactivity Disorder ("ADHD"), and in March of 2003, DPCS found D.B. eligible for services with a disability classification of Emotional Disturbance ("ED"). His initial IEP, dated September 17, 2003, required 20 hours of specialized instruction and one hour of psychological counseling per week. *Id*. In May of 2004, a multidisciplinary

team ("MDT") convened to review D.B.'s IEP.  *Id.*  The team reduced his specialized

education services to 15 hours per week and continued the one hour of counseling.  R. at

17.  In June of 2004, an independent occupational therapy ("OT") evaluation of D.B. was

completed, and the evaluator recommended that D.B. receive OT services.  *Id.*

The Plaintiff filed a due process hearing request in 2004.  R. at 17.  A November,

12, 2004, HOD resulted.  *Id.*  The Hearing Officer held that D.B.'s IEP and placement at

Kimball were appropriate, and that the student had not been denied a FAPE.  *Id.*  He also

ordered DCPS to convene an MDT meeting to review the OT evaluation, to revise the

student's IEP with regard to that OT evaluation if needed, and to determine the student's

compensatory education plan.[1]  *Id.*  On January 12, 2005, a MDT meeting convened, and

the team determined that D.B. was owed 64 hours of compensatory education services,

but was not able to review the OT evaluation.  *Id.*

In April of 2005, a new clinical psychological evaluation was conducted, and the

evaluator diagnosed D.B. with not only ADHD, but also Depressive Disorder.  R. at 17.

The evaluator did not recommend a full-time special education placement.  *Id.*  In May of

2005, DCPS convened a MDT meeting to update D.B.'s IEP.  R. at 18.  The team

changed his disability classification to Multiple Disabilities ("MD").  *Id.*  The team also

changed the services prescribed in the IEP to 15 hours per week of specialized

instruction, one hour per week of psychological services and one hour per week of speech

language therapy.  R. at 18.  On May 9, 2006, the MDT convened for its annual review of

D.B.'s IEP.  *Id.*  The team amended D.B.'s IEP by changing his classification to Learning

Disabled ("LD"), and by reducing the speech language services to 30 minutes per week,

---

[1] Compensatory education is a judicially-created remedy in which the student is awarded services or
assistive technology for a denial of a FAPE.  The goal is to bring the student's educational performance up
to where it would have been had the student been receiving a FAPE all along.

but the other services remained the same.  *Id.*  The team also changed D.B.'s placement to Kelly Miller Middle School.[2]  *Id.*

According to Ms. Robin Rabb, the Special Education Coordinator at Kimball, D.B.'s IEP was implemented at Kimball, and the student progressed.  R. at 17.  She indicated that during the SYs 2004-2005 and 2005-2006, Kimball had on staff a special education teacher and related services providers to implement D.B.'s IEP.  *Id.*  As the Special Education Coordinator, Ms. Rabb should have been notified about any lapses in delivery of services to D.B., and she was not made aware of any such lapses.  *Id.*  However, according to Plaintiff Evelyn Sykes, D.B.'s mother, while D.B. was at Kimball, he did not consistently receive counseling services.  *Id.*

According to Ms. Karen Plowden, Executive Director of Student Services at Rock Creek Academy, D.B. was interviewed and admitted into Rock Creek Academy—a private school offering a full-time special education program (with no general education students)—for the SY 2006-2007.  R. at 18.  The classroom D.B. would be assigned to had four other students, all with ED classifications.  *Id.*

In June of 2006, the Plaintiff filed a Due Process Complaint Notice, which resulted in the subject HOD.  R. at 191.  The Plaintiff alleged the following violations:

1. Failure to provide an appropriate placement since the start of the 2003-2004 SY.
2. Failure to conduct and review adequate evaluations in all areas of suspected disability.
3. Failure to determine an appropriate disability classification for a qualified child with a disability since the start of the 2003-2004 SY.
4. Failure to develop appropriate IEPs since the start of the 2003-2004 SY.

---

[2] Kimball Elementary School has pre-Kindergarten through 5th grade.  Kelly Miller Middle School has 6th grade through 8th grade. Because D.B. was to enter the 6th grade in SY 2006-2007, he aged out of Kimball.

5. Failure to provide necessary special education and related services since the start of the 2003-2004 SY.

6. Failure to provide ESY [Extended School year, which is summer school] following the 2003-2004, 2004-2005, and 2005-2006 SYs.

R. at 191.

On August 23, 2006, a due process hearing convened. R. at 15, 199. At the hearing, the Hearing Officer accepted into the record all of the parties' document exhibits, including D.B.'s Exhibit 1-27 and DCPS' Exhibit 1. He also heard testimony from three witnesses—Plaintiff and mother of D.B. Evelyn Sykes; Special Education Coordinator of Kimball Robin Rabb; and Executive Director of Student Services at Rock Creek Academy Keren Plowden. R. at 16, 24, 26. The Hearing Officer also considered a previous HOD, issued on November 9, 2004. R. at 16. The record closed with Plaintiff's counsel's written closing brief on August 31, 2006. *Id.* From the outset of the hearing, the Hearing Officer found that "[t]he November 2004, HOD found and concluded that the student's IEP and placement at Kimball was appropriate. Therefore, the claim the student's IEP was inappropriate must be based upon factors that occurred following that HOD and during SY 2004-205 and SY 2005-06." R. at 20.

The Plaintiff won on almost every issue at the administrative hearing level. R. at 20-23. The only issue that was not addressed by the Hearing Officer was the appropriateness of the student's placement at Kelly Miller Middle School. R. at 19 (footnote 8). Because the Plaintiff did not clearly allege in the violations section of the administrative Due Process Complaint Notice that D.B.'s placement at Kelly Miller for the school year ("SY") 2006-2007 was inappropriate, the Hearing Officer held that DCPS

was not required to prove the appropriateness of Kelly Miller at the hearing. *Id.;* R. at 2-3; R. at 191- 195.

Specifically, the Hearing Officer identified three issues for his consideration at the due process hearing:

Did DCPS deny the student FAPE by:

1. Failing to provide the student an appropriate IEP from December 2004[?][3]
2. Failing to provide the student specialized instruction and related services from December 2004 to the end of SY 2005-2006?
3. Failing to provide the student an appropriate placement for that same period?

R. at 19. With regard to Issues 1-2, the Hearing Officer held that DCPS failed to meet its burden, and thus denied the student a FAPE. *Id.*, at 20-21. With regard to Issue 3, the Hearing Officer found that that more information was needed to address the placement issue (as well as the student's disability classification). *Id.*, 21-22.

Further, the Hearing Officer found that the record did not support a finding that Plaintiff's proposed private school placement—Rock Creek Academy—was appropriate for the student. R. at 22. The parent had specifically requested that the D.B. be placed in a full-time special education classroom at Rock Creek Academy with all ED-classified children. *Id.* In that regard, the Hearing Officer stated:

The student's most recent IEP does not even contain an ED classification and does not prescribe a full time special education program. There are no current evaluations from which the Hearing Officer can discern the appropriate placement for the student. It is not clear, even with the testimony of Ms. Plowden that the student's placement in a full time special education program with ED students would be of educational benefit rather than detrimental to the student. Therefore, the Hearing Officer orders in

---

[3] A previous HOD, issued November 2004, addressed issues prior to December 2004. R. at 19, Fn. 8.

> addition to the evaluations that were agreed [upon by] the parties an immediate student evaluation plan meeting to determine the evaluations necessary to accurately determine the student's disability classification.

R. at 22.

Because the Hearing Officer found the record to be insufficient with regard to the student's placement needs, he ordered DCPS to fund private evaluations, to convene a student evaluation plan meeting and complete any additional evaluations, and then to convene a MDT meeting to discuss placement, among other issues. *Id.*, at 22. He also held that DCPS failed to consider whether the student required OT services, and that the IEP failed to explain changes in classifications and the reduction of speech language services. R. at 20. The Hearing Officer further ordered DCPS to provide the student with compensatory education for any missed services during the SY 2004-2005 to SY 2006-2007. R. at 22.[4]

## **ARGUMENT**

I.      **The Plaintiff is not an aggrieved party, and therefore does not have a cause of action under the IDEIA.**

As a preliminary matter, the District believes the Complaint must be dismissed because the Plaintiff failed to plead any facts in the Complaint that give rise to a cause of action under the IDEIA.

According to the IDEIA, "any party *aggrieved* by [a hearing officer's] findings and decision … shall have the right to bring a civil action with respect to the [due process] complaint presented ... " 20 U.S.C. § 1415(i)(2)(A) (emphasis added).

---

[4] The HOD indicates that the parties agreed to have the MDT propose a compensatory education plan. HOD, R. at 22, Fn. 13.

Under a plain reading of the IDEIA, the Plaintiff in the present action is not "aggrieved" with regard to the aspects of the HOD she appealed in her Complaint. A review of the subject HOD leaves no doubt that the Plaintiff received the all of the relief she requested in her Due Process Complaint Notice, except for attorney's fees (which a hearing officer cannot award) and a placement at Rock Creek Academy, which was not appealed in her Complaint.

In the Plaintiff's June 16, 2006, Due Process Complaint Notice, she requested the following relief:

1. DCPS to immediately take all steps necessary to fund and place [D.B.] at an appropriate private school of the Petitioner's choosing, with transportation.
2. DCPS to immediately fund current evaluations of [D.B.] in all areas of suspected disability, including social history, occupational therapy, psychoeducational, and clinical psychological evaluations, as well as any other evaluations recommended therein.
3. DCPS to convene an MDT meeting within ten (10) days of receiving current evaluations of [D.B.] in all areas of suspected disability to:
   a. review these evaluations,
   b. revise [D.B.'s] IEP, including his current disability classification and his prescribed hours per week of special education and related services, and
   c. develop a compensatory education plan to compensate [D.B.] for DCPS' failure to develop and implement appropriate IEPs and to provide an appropriate placement since the start of the 2003-2004 SY.[5].
   d. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

---

[5] The Plaintiff conceded at the due process hearing that a previous HOD addressed all issues prior to December of 2004, and therefore were not properly before the Hearing Officer in the present case. HOD, R. at 19, Fn. 8.

Due Process Complaint Notice, R. at 193-194.  In the HOD, the Plaintiff received everything she requested except for a placement at Rock Creek Academy and attorneys' fees, which cannot be awarded by a hearing officer.[6]  R. at 22.

While it is true that the Hearing Officer did not order placement at Rock Creek Academy, the Complaint itself does not challenge the Hearing Officer's findings and conclusions regarding Rock Creek Academy; thus, the Plaintiff has waived her appeal of that aspect of the HOD.  Complaint, generally.  In fact, the Plaintiff only mentions Rock Creek Academy in her Complaint three times: (1) in her introduction as a request for relief, (2) in passing in her word-for-word quotation of her entire motion for reconsideration; and (3) in her final paragraph as a request for relief.  Complaint, at 1, 11, 12.  Not once does she allege even generally that the Hearing Officer erred in his conclusion that the record did not support a placement at Rock Creek Academy.[7] Without such a challenge, the Hearing Officer's findings and conclusions on that issue remain and cannot be raised in this action.

Thus, because the Plaintiff received all the relief she requested except for attorneys' fees, which hearing officers cannot award (but which DCPS can award upon request), and a placement at Rock Creek Academy—which she did not challenge in her Complaint—she is not an aggrieved party, and cannot maintain this lawsuit.

---

[6] Although hearing officers cannot award fees, the prevailing parties of due process hearings may submit their invoices to DCPS, along with a copy of the HOD, for payment by DCPS.  If that request is denied, the Plaintiff may bring an action in court.

[7] In the HOD, the Hearing Officer specifically found that the record—including his most recent IEP at the time of the hearing and the testimony of Ms. Plowden of Rock Creek Academy—did not support a placement at Rock Creek Academy.  R. at 18, 22.  For example, D.B.'s last IEP did not classify him as ED and did not require a full time special education program.  R. at 22.  Ms. Plowden said that D.B. would be assigned to full time special education classroom with four other children who are ED.  R. at 18.

**II.    The Hearing Officer considered all of the Plaintiff's evidence and arguments, and his ultimate determinations should be deferred to in this case.**

At the due process hearing, the Plaintiff had a full opportunity to present evidence and argument to support her requests for relief to the Hearing Officer.  In the HOD, all of the evidence offered, and legal arguments made, were taken into account.  Indeed, the decision was an extensive, reflective consideration of both the parties' positions and the best interests of the student.[8]  The relief ordered was designed to take the particular circumstances of the student into account, and was based on experience in the confronting of such educational problems.

While the Plaintiff may request this Court to disregard the Hearing Officer's conclusions, and to make an independent (and different) determination of the appropriate relief, there is no basis for the Court to conclude either that the Hearing Officer did not properly consider the evidence submitted, or that his expressed views are not entitled to conclusive deference by this Court.  In fact, the HOD narrates in detail the chronology and content of the student's various evaluations, IEPs and services. R. at. 15-27.  The Hearing Officer fully considered the Plaintiff's documentary evidence, weighed the testimony offered by the parties' witnesses and explained the basis for his conclusions.

The amount of deference given to an administrative hearing officer's decision is based in part on whether the findings reached were "thorough and complete." *See*, e.g., *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999); *see also S.H. v. State-Operated School Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  In this case, the administrative findings and conclusions were both thorough and complete, were legally correct, and should be summarily affirmed.

---

[8] Because the District waived its right to appeal the subject HOD, it will not here challenge the findings and conclusions of the Hearing Officer, although most of the HOD is unfavorable to the District.

## **CONCLUSION**

This Court should dismiss the Complaint because the Plaintiff was not an aggrieved party under the IDEIA.  In the alternative, as the Defendant has demonstrated, the HOD was proper and should be upheld by this Court.  It was consistent with the IDEIA in law and in spirit.  Accordingly, Plaintiff's motion for summary judgment should be denied, and the Defendant's present motion should be granted.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)

June 29, 2007          E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EVELYN SYKES, ) | |
| Guardian and Next Friend of D.B., a Minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0255 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| A municipal corporation, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS**
**TO WHICH THERE IS NO GENUINE ISSUE AND RESPONSE**

Pursuant to Local Civil Rule 56.1, Defendants submit this statement of material facts as to which there is no genuine issue:

1.  D.B is a twelve-year old resident of the District of Columbia, who has been determined eligible for special education and related services.  Administrative record, filed May 29, 2007, page 16 (citations to the administrative record will hereinafter appear "R. at _____").

2.  At the time of the September 15, 2006, HOD challenged in this suit, D.B. had just completed his final year at Kimball Elementary School, a school within the DCPS system which he had attended since 2003.  R. at 16.

3.  In January of 2003, a psychiatric evaluation diagnosed D.B. with Attention Deficit Hyperactivity Disorder ("ADHD"), and in March of 2003, DPCS found D.B. eligible for services with a disability classification of emotional disturbance ("ED").  R. at 16.

4.      His initial IEP, dated September 17, 2003, required 20 hours of specialized
        instruction and one hour of psychological counseling per week.  *Id*.

5.      In May of 2004, a multidisciplinary team ("MDT") convened to review D.B.'s
        IEP.  *Id.*

6.      The team reduced his specialized education services to 15 hours per week and
        continued the one hour of counseling.  R. at 17.

7.      In June of 2004, an independent occupational therapy ("OT") evaluation of D.B.
        was completed, and the evaluator recommended that he receive OT services.  *Id.*

8.      The Plaintiff filed a due process hearing request in 2004.  R. at 17.

9.      A November, 12, 2004, HOD resulted.  *Id.*

10.     The Hearing Officer held that the IEP and placement at Kimball were appropriate,
        and that the student had not been denied a FAPE.  *Id.*

11.     He also ordered DCPS to convene an MDT meeting to review the OT evaluation,
        to revise the student's IEP with regard to that OT evaluation if needed, and to
        determine the student's compensatory education plan.  *Id.*

12.     On January 12, 2005, a MDT meeting convened, and the team determined that
        D.B. was owed 64 hours of compensatory education services, but was not able to
        review the OT evaluation.  *Id.*

13.     In April of 2005, a new clinical psychological evaluation was conducted, and the
        evaluator diagnosed D.B. with not only ADHD, but also Depressive Disorder.  R.
        at 17.

14.     The evaluator did not recommend a full-time special education placement.  *Id.*

15.  In May of 2005, DCPS convened a MDT meeting to update D.B.'s IEP.  R. at 18. The team changed his disability classification to Multiple Disabilities ("MD"). *Id.*

16.  The team also changed the services prescribed in the IEP to 15 hours per week of specialized instruction, one hour per week of psychological services and one hour per week of speech language therapy.  R. at 18.

17.  On May 9, 2006, the MDT convened for its annual review of D.B.'s IEP.  *Id.*

18.  The team amended D.B.'s IEP by changing D.B.'s classification to Learning Disabled ("LD"), and by reducing the speech language services to 30 minutes per week, but the other services remained the same.  *Id.*

19.  The team also changed D.B.'s placement to Kelly Miller Middle School.  *Id.*

20.  According to Ms. Robin Rabb, the Special Education Coordinator of Kimball, D.B.'s IEP was implemented at Kimball, and the student progressed.  R. at 17.

21.  She indicated that during the school years ("SYs") 2004-2005 and 2005-2006, Kimball had on staff a special education teacher and related services providers to implement D.B.'s IEP.  *Id.*

22.  As the Special Education Coordinator, Ms. Rabb should have been notified about any lapses in delivery of services to D.B., and she was not made aware of any such lapses.  *Id.*

23.  However, according to Plaintiff Evelyn Sykes, D.B.'s mother, while D.B. was at Kimball, he did not consistently receive counseling services.  *Id.*

24.  According to Ms. Karen Plowden, Executive Director of Student Services at Rock Creek Academy, D.B. was interviewed and admitted into Rock Creek Academy—

a private school offering a full time special education program (with no general

education students)—for the SY 2006-2007. R. at 18.

25.     The classroom D.B. would be assigned to had four other students, all with ED

classifications. *Id.*

26.     In June of 2006, the Plaintiff filed a Due Process Complaint Notice, which

resulted in the subject HOD. R. at 191.

27.     The Plaintiff alleged the following violations:

> 1. Failure to provide an appropriate placement since the start
>    of the 2003-2004 SY.
> 2. Failure to conduct and review adequate evaluations in all
>    areas of suspected disability.
> 3. Failure to determine an appropriate disability classification
>    for a qualified child with a disability since the start of the
>    2003-2004 SY.
> 4. Failure to develop appropriate IEPs since the start of the
>    2003-2004 SY.
> 5. Failure to provide necessary special education and related
>    services since the start of the 2003-2004 SY.
> 6. Failure to provide ESY [Extended School year, which is
>    summer school] following the 2003-2004, 2004-2005, and
>    2005-2006 SYs.

R. at 191.

28.     On August 23, 2006, a due process hearing convened. R. at 199.

29.     At the hearing, the Hearing Officer accepted into the record all of the parties'

document exhibits, including D.B.'s Exhibit 1-27 and DCPS' Exhibit 1. R. at 16.

30.     He also heard testimony from three witnesses—Plaintiff and mother of D.B.

Evelyn Sykes; Special Education Coordinator of Kimball Robin Rabb; and

Executive Director of Rock Creek Academy Keren Plowden. R. at 16, 24, 26.

31.     The Hearing Officer also considered a previous HOD, issued on November 9,

2004. R. at 16.

32.  The record closed with Plaintiff's counsel's written closing brief on August 31, 2006.  R. at 16.

33.  From the outset, the Hearing Officer found that "[t]he November 2004, HOD found and concluded that the student's IEP and placement at Kimball was appropriate.  Therefore, the claim the student's IEP was inappropriate must be based upon factors that occurred following that HOD and during SY 2004-205 and SY 2005-06."  R. at 16, 20.

34.  The Plaintiff won on almost every issue at the administrative hearing level.  R. at 20-23.

35.  The only issue that was not addressed by the Hearing Officer was the appropriateness of the placement of the student at Kelly Miller Middle School.  R. at 19 (footnote 8).

36.  Because the Plaintiff did not clearly allege in the violations section of the administrative Due Process Complaint Notice that the student's placement at Kelly Miller for the school year ("SY") 2006-2007 was inappropriate, the Hearing Officer held that DCPS was not required to prove the appropriateness of Kelly Miller at the hearing.  *Id.;* R. at 2-3; R. at 191- 195.

37.  Specifically, the Hearing Officer identified three issues for his consideration at the due process hearing:

Did DCPS deny the student FAPE by:

1.  Failing to provide the student an appropriate IEP from December 2004[?][9]
2.  Failing to provide the student specialized instruction and related services from December 2004 to the end of SY 2005-2006?

---

[9] A previous HOD, issued November 2004, addressed issues prior to December 2004.  R. at 19, Fn. 8.

      3.  Failing to provide the student an appropriate placement
          for that same period?

R. at 19.

38.    With regard to Issues 1-2, the Hearing Officer held that DCPS failed to meet its

burden, and thus denied the student a FAPE. *Id.*, at 20-21.

39.    With regard to Issue 3, the Hearing Officer found that that more information was

needed to address the placement issue (as well as the student's disability

classification). *Id.*, 21-22.

40.    Further, the Hearing Officer found that the record did not support a finding that

Plaintiff's proposed private school placement—Rock Creek Academy—was

appropriate for the student.  R. at 22.

41.    The parent had specifically requested that the student be placed in a full time

special education classroom at Rock Creek Academy with all ED-classified

children. *Id.*

42.    In that regard, the Hearing Officer stated:

> The student's most recent IEP does not even contain an ED
> classification and does not prescribe a full time special
> education program.  There are no current evaluations from
> which the Hearing Officer can discern the appropriate
> placement for the student.  It is not clear, even with the
> testimony of Ms. Plowden that the student's placement in a
> full time special education program with ED students
> would be of educational benefit rather than detrimental to
> the student.  Therefore, the Hearing Officer orders in
> addition to the evaluations that were agreed [upon by] the
> parties an immediate student evaluation plan meeting to
> determine the evaluations necessary to accurately
> determine the student's disability classification.

R. at 22.

43.    Because the Hearing Officer found the record to be insufficient with regard to the

student's placement needs, he ordered DCPS to fund private evaluations, to

convene a student evaluation plan meeting, and complete any additional

evaluations, and then to convene a MDT meeting to discuss placement, among

other issues. *Id.*, at 22.

44.    He also held that DCPS failed to consider whether the student required OT

services, and that the IEP failed to explain changes in classifications and the

reduction of speech language services. R. at 20.

45.    The Hearing Officer further ordered DCPS to provide the student with

compensatory education for any missed services during the SY 2004-2005 to SY

2006-2007. R. at 22.[10]

46.    In the Plaintiff's June 16, 2006, Due Process Complaint Notice, she requested the

following relief:

    1.    DCPS to immediately take all steps necessary to fund and
place [D.B.] at an appropriate private school of the
Petitioner's choosing, with transportation.
    2.    DCPS to immediately fund current evaluations of [D.B.] in
all areas of suspected disability, including social history,
occupational therapy, psychoeducational, and clinical
psychological evaluations, as well as any other evaluations
recommended therein.
    3.    DCPS to convene an MDT meeting within ten (10) days of
receiving current evaluations of [D.B.] in all areas of
suspected disability to:
        a.    review these evaluations,
        b.    revise [D.B.'s] IEP, including his current disability
classification and his prescribed hours per week of
special education and related services, and
        c.    develop a compensatory education plan to
compensate [D.B.] for DCPS' failure to develop
and implement appropriate IEPs and to provide an

---

[10] The HOD indicates that the parties agreed to have the MDT propose a compensatory education plan.
HOD, R. at 22, Fn. 13.

appropriate placement since the start of the 2003-
2004 SY.[11].

4.  DCPS to pay reasonable attorney fees and costs incurred in
bringing and pursuing this case.

Due Process Complaint Notice, R. at 193-194.

> Respectfully submitted,
>
> LINDA SINGER
> Attorney General
> for the District of Columbia
>
> GEORGE C. VALENTINE
> Deputy Attorney General
> Civil Litigation Division
>
> **/s/ Edward P. Taptich**
> EDWARD P. TAPTICH
> Chief, Equity Section 2
> Bar Number 012914
>
> **/s/ Eden I. Miller**
> EDEN I. MILLER
> Assistant Attorney General
> Bar Number 483802
> 441 Fourth Street, N.W., Sixth Floor South
> Washington, D.C. 20001
> (202) 724-6614
> (202) 727-3625 (fax)

June 29, 2007                      E-mail: Eden.Miller@dc.gov

---

[11] The Plaintiff conceded at the due process hearing that a previous HOD addressed all issues prior to December of 2004, and therefore were not properly before the Hearing Officer in the present case.  HOD, R. at. 19, Fn. 8.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| EVELYN SYKES,<br>Guardian and Next Friend of D.B., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 07-0255 (RCL) |

**<u>ORDER</u>**

Upon consideration of the Defendant's Motion for Summary Judgment and the Plaintiff's Cross-Motion for Summary Judgment, the Oppositions and Replies thereto, and the record herein, it is, on this _____ of _____, 2007, hereby **ORDERED** that:

1. the Defendant's Motion for Summary Judgment is **GRANTED**; and it is further **ORDERED** that

2. the Plaintiff's Motion for Summary Judgment is **DENIED;** and it is further **ORDERED** that

3. this case is **DISMISSED WITH PREJUDICE.**


_____
Royce C. Lamberth
United States District Judge