THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
)
EVELYN SYKES,                               )
        Plaintiff,                        )
                        )      Civil Action No. 07-255
v.                                          )      RCL
                        )
DISTRICT OF COLUMBIA,                       )
        Defendant.                        )
———————————————————)

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff, by and through her undersigned counsel, hereby respectfully moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all claims, and in support of her Motion submits the attached Memorandum and states as follows:

1) The administrative Hearing Officer erred in denying the Plaintiff any relief for the failure of the District of Columbia Public Schools ("DCPS") to serve a response to the administrative complaint.

2) The Hearing Officer erred in denying the Plaintiff appropriate relief for DCPS' failure to provide access to school records.

3) The Hearing Officer erred in admitting hearsay testimony in violation of the Plaintiff's right to confront and cross-examine witnesses.

4) DCPS failed to provide D.B. with an appropriate school placement, and failed to provide D.B. necessary instruction and services.

5) Rock Creek Academy is an appropriate school placement for D.B..

Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
Phone:  (202) 265-4260
Fax:  (202) 265-4264

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
EVELYN SYKES,                           )
                 Plaintiff,             )
                                        )        Civil Action No. 07-255
v.                                      )        RCL
                                        )
DISTRICT OF COLUMBIA,                   )
                 Defendant.             )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Plaintiff, Evelyn Sykes, brought this case on behalf of her grandson under the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., to

challenge an adverse administrative decision granting her partial relief from the District

of Columbia Public Schools ("DCPS"). The Plaintiff seeks funding for a private school

placement and declaratory and injunctive relief related to compensatory education.

The majority of this memorandum addresses procedural issues, because DCPS'

procedural violations made it nearly impossible for either party to present meaningful

evidence at the due process hearing.  In brief, DCPS failed to serve a response to the due

process complaint that complied with IDEA requirements, failed to respond to Ms.

Sykes' request for documents before the hearing, and failed to disclose any documentary

evidence for use at the hearing. Nonetheless, the Hearing Officer refused to grant Ms.

Sykes any relief for those violations, and refused to take any action at the hearing to

protect Ms. Sykes from prejudice. Instead, the Hearing Officer allowed DCPS to make its

1

case on the testimony of one witness, whose testimony regarding the relevant facts consisted entirely of hearsay.

Though the Plaintiff asks the court to rule in her favor solely on the basis of DCPS' egregious procedural violations, the undisputed facts of this case warrant judgment for the Plaintiff on the merits.

## BACKGROUND

Ms. Sykes' grandson D.B. is a twelve-year-old boy who has been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"), Fetal Alcohol Syndrome, and Emotional Disturbance. (R. at 42, 110.) Multiple evaluations have recommended that D.B. be provided a small class size in a year-round therapeutic setting. (R. at 42, 90, 98.)

Following a 2003 psychiatric evaluation recommending placement in a "year-round, structured, therapeutic school program…[with] a smaller classroom" (R. at 42), DCPS placed D.B. at Kimball Elementary School ("Kimball") in a "combination" general education and special education setting on September 17, 2003. (R. at 64.) DCPS later renewed D.B.'s placement at Kimball for the next two school years, 2004-2005 and 2005-2006. (R. at 82, 120.) On May 9, 2006, DCPS changed D.B.'s placement to Kelly Miller Middle School ("Kelly Miller"), in a combination setting, effective for the 2006-2007 school year. (R. at 131.)

DCPS placed D.B. at Kelly Miller because it was believed to be his home school. (Hr'g Tr. 58, Aug. 23, 2006.) At the May 9, 2006 multidisciplinary team ("MDT") meeting at which DCPS made that placement decision, no attendee was able to explain Kelly Miller's program to Ms. Sykes or to discuss D.B.'s potential placement there. (R. at 18; Hr'g Tr. 72.)

2

Upon initially placing D.B. at Kimball, when renewing that placement over the years, and when placing D.B. at Kelly Miller, DCPS did not provide Ms. Sykes with a written prior notice explaining the basis for its determination, if any, that each school was appropriate for D.B.. (R. at 64, 82, 120, 131.) At the time of each placement, DCPS did not provide a description of evaluations, procedures, assessments, records, and/or reports that DCPS used as a basis for its decision. (R. at 64, 82, 120, 131.) At the time of each placement, DCPS did not provide a description of other schools considered and the reason why they were rejected. (R. at 64, 82, 120, 131.)

The Plaintiff filed an IDEA due process complaint on June 16, 2006 alleging, inter alia, DCPS' "[f]ailure to provide an appropriate placement since the start of the 2003-2004 SY…[f]ailure to conduct and review evaluations in all areas of suspected disability…[f]ailure to determine an appropriate disability classification for a qualified child with a disability since the start of the 2003-2004 SY…[f]ailure to develop appropriate IEPs since the start of the 2003-2004 SY…[f]ailure to provide necessary special education and related services since the start of the 2003-2004 SY [and] …[f]ailure to provide ESY following the 2003-2004, 2004-2005, and 2005-2006 SYs." (R. at 191.)[1] The due process complaint specifically alleged that "DCPS' proposed placement at Kelly Miller MS is not appropriate." Id.

DCPS filed a "Response to Due Process Complaint Notice" on June 27, 2006. Exhibit 1.[2] The Response appears to be a form response to due process complaints.

---

[1] Due to the discovery, after the filing of the Complaint, of an existing Hearing Officer's Determination, Ms. Sykes stipulated to the limitation of her claims to violations since December 2, 2004 (R. at 28-29.)
[2] The Plaintiff attaches this exhibit, the full two-page Response, because the second page is absent from the copy of the Response in the record as filed.

3

The response contains a flat denial of the claims in the due process complaint, though not in the order in which they are listed in the complaint, or with the same phrasing. (<u>Compare</u> R. at 191; Exhibit 1.) The Response includes the denial of two allegations not made in the due process complaint:

> DCPS **DENIES** the allegation that if failed to identify this child as a child with a disability.
> ***
> DCPS **DENIES** the allegation that it violated the 'child find' requirement. DCPS contends that it had no reason to suspect this child in need of special education services.

Exhibit 1. The Response also states:

> DCPS did not issue a Prior to Action Notice in this case because the allegations within the complaint fail to allege that the agency has proposed or refused to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education of the child[.]

Exhibit 1.

On June 28, 2006, the Plaintiff filed a written motion for default judgment based on DCPS' failure to serve an adequate response in compliance with 20 U.S.C. § 1415(c)(2)(B)(i)(I). (R. at 169.) The Motion, which consisted of thirteen substantive pages, argued for a default based on <u>Spiegler v. Dist. of Columbia</u>, 866 F.2d 461 (D.C. Cir. 1989) and <u>Massey v. District of Columbia,</u> 400 F. Supp. 2d 66, 71 (2005), and read much like Argument I, below. (R. at 169-184.)

Less than three hours after receipt of the Motion, the Hearing Officer issued an order denying the Motion. (R. at 168, 169.) As explanation for the denial, the Hearing Officer stated only: "No procedural violations alleged per 20 U.S.C. 1415(f)(3)(E)(ii) that would warrant a default judgment. See *Lesesne v. District of Columbia*, U.S. Court of Appeals, D.C. Circuit, No. 05-7123." (R. at 168.)

4

Prior to the due process hearing of the due process complaint, Plaintiff's counsel submitted a request for access to student records to Kimball's Special Education Coordinator. (R. at 4,158; Hr'g Tr. 65.) DCPS never responded to that request. (R. at 4; Hr'g Tr. 65.)

A due process hearing was convened on August 23, 2006. (R. at 27.) Prior to the hearing, counsel for the parties exchanged "five-day disclosures." Ms. Sykes' disclosure included a witness list, a notice compelling witnesses, and 27 documents. (R. 35-162.) DCPS' disclosure included a witness list including witness from Kimball and Kelly Miller, but no documents. (R. at 33-34.)

At the hearing, DCPS offered no documents and called one witness, Robin Rabb, the Special Education Coordinator at Kimball. Ms. Rabb testified regarding past IEP meetings, and regarding D.B.'s receipt of instruction and services at Kimball and his progress made there. (Hr'g Tr. 44-66.) Though DCPS had disclosed a potential witness from Kelly Miller, DCPS declined to call that witness at the hearing. (R. at 33; Hr'g Tr. 13.)

The Hearing Officer admitted the Plaintiff's 27 documents. The Plaintiff called two witness, Ms. Sykes and Keren Plowden, who testified regarding Rock Creek Academy, the placement sought by Ms. Sykes for D.B..(Hr'g Tr. 66-84.)

At the start of the hearing, the Plaintiff requested inferences based on DCPS' failure to respond to the pre-hearing request for documents. (Hr'g Tr. 8-9.)  Specifically, the Plaintiff requested an inference that the documents not provided "show that [D.B.] has not been receiving services, that he has not been educated adequately during these

past three years." (Hr'g Tr. 9.) The Hearing Officer did not rule on that request at the hearing.

The Plaintiff objected to any testimony addressing issues to which the undisclosed documents would have been relevant. (Hr'g Tr. 46-47, 59-60.) The Hearing Officer allowed the testimony over those objections. (Hr'g Tr. 47, 60.)

The Plaintiff further objected to the bulk of Ms. Rabb's testimony because it was hearsay. (Hr'g Tr. 52-53.) The Hearing Officer allowed the testimony over that objection. (Hr'g Tr. 53.)

In the Hearing Officer's Determination ("HOD"), he found that DCPS had denied D.B. free appropriate public education ("FAPE") by failing to provide him with an appropriate IEP since December 2004 and failing to provide him with all of his counseling since December 2004. (R. at 20-21.) On the sole basis of Ms. Rabb's testimony, the Hearing Officer found that D.B. had received all of his prescribed specialized instruction while he was at Kimball, that he had made progress while there, and that Kimball had been an appropriate placement. (R. at 21.)

The Hearing Officer found that, at the May 9, 2006 meeting at which DCPS had placed D.B. at Kelly Miller, there had been "no one...to discuss Kelly Miller as the placement." Nonetheless, the Hearing Officer specifically refused to rule on the Kelly Miller placement because "the original complaint did not allege the student's 2006-07 placement at Kelly Miller was inappropriate such that DCPS was required to prove the appropriateness of Kelly Miller." (R. at 19, footnote 8.)

On September 26, the Plaintiff filed a Motion for Reconsideration, requesting that the Hearing Officer reconsider the issue of D.B.'s placement to Kelly Miller. (R. at 11-13.) On November 3, 2006, the Hearing Officer denied the Plaintiff's motion. (R. at 2-3.)

## STATUTORY FRAMEWORK

The IDEA, 20 U.S.C. § 1400, et seq., guarantees "that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.300.

"The primary vehicle for implementing these congressional goals is the "individualized educational program (IEP)…Prepared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child, the IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." Honig v. Doe, 484 U.S. 305, 311 (1988).

Students' abilities must be assessed and evaluated before they can be found eligible to receive specialized instruction. See 20 U.S.C. § 1414(b)(4). "Each local educational agency shall ensure that...the child is assessed in all areas of suspected disability." 20 U.S.C. § 1414(b)(3)(B).

To protect the rights of parents of a child with a disability, the IDEA requires the local educational agency to provide written prior notice whenever the agency "proposes to initiate or change, or refuses to initiate or change the identification, evaluation, or

educational placement of the child, or the provision of free appropriate public education to the child." 20 U.S.C. § 1415(b)(3).

Furthermore, the IDEA guarantees parents of a child with a disability the right to examine all records relating to that child. See 20 U.S.C. § 1415(b)(1). The local educational agency "must comply with a request [for records] without unnecessary delay…and in no case more than 45 days after the request has been made." 34 C.F.R. § 300.613(a).

Congress has also afforded parents several procedural safeguards. See 20 U.S.C. § 1415. Among them are the right to an administrative "due process hearing," and the right of "any party aggrieved by the findings and decision" at a due process hearing "to bring a civil action with respect to the complaint presented...in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). In such a proceeding, the focus of a reviewing court's inquiry is two-fold:  (1) whether the state has complied with the procedural requirements of the Act; and (2) whether the IEP developed through these procedures is "reasonably calculated to enable the child to receive educational benefits." Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206-207 (1982).

Amendments to the IDEA effective July 2005 established new pleading standards. The IDEA now requires greater specificity in due process complaints, allows a respondent to challenge the sufficiency of a complaint, and requires that a respondent serve a "response" to the complaint containing certain specific information. See 20 U.S.C. §§ 1415(b)(7) and 1415(c)(2).

The IDEA also sets forth evidentiary procedures for due process hearings. At least five days before a due process hearing, "each party shall disclose to all other parties all evaluations completed by that date, and recommendations based on the offering party's evaluations, that the party intends to use at the hearing." 20 U.S.C. § 1415(f)(2)(A). Every party to a hearing has the absolute right to "[p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at five business days before the hearing[.]" 34 C.F.R. § 300.512(a)(3). Each party also has the right to confront, cross-examine, and compel the attendance of witnesses. <u>See</u> 20 U.S.C. § 1415(h)(2); 34 C.F.R. § 300.512(a)(2).

## SUMMARY JUDGMENT STANDARD

In general, summary judgment is appropriate when the record as a whole shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, a trial court must draw all justifiable inferences in the non-moving party's favor, but the non-moving party may not rely on mere conclusory allegations, and "must present significant probative evidence tending to support" its position. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). In a summary judgment motion, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

Unlike typical judicial review of administrative action, in suits filed under the IDEA following an administrative hearing, the court bases its decision on the

9

preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B)(iii). "The district court's standard of review under the IDEA is less deferential than that applied under the traditional substantial evidence test used in ordinary administrative review cases." Scorah v. District of Columbia, 322 F. Supp. 12, 16 (D.D.C. 2004) (citing Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988) and Kroot v. D.C., 800 F. Supp. 976, 981 (D.C.C. 1992)). Still, the Plaintiff must persuade the court that the hearing officer was wrong, and the court must explain its basis for ruling against the hearing officer. See Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988).

At the due process hearing at issue, held in response to a complaint filed June 16, 2006, DCPS bore the burden of proof. (R. at 20.); 5 DCMR 3030.3 (2002), *amended by* 53 DCR 5249 (June 30, 2006.).

## ARGUMENT

## I.    THE HEARING OFFICER ERRED IN DENYING THE PLAINTIFF RELIEF FOR DCPS' FAILURE TO SERVE AN ADEQUATE RESPONSE.

DCPS' Response to the Plaintiff's due process complaint clearly fails to meet the explicit requirements of the IDEA. The United States District Court for the District of Columbia has ruled that DCPS must follow the IDEA response requirements to the letter of the law. See Massey v. District of Columbia, 400 F. Supp. 2d 66, 71 (2005) ("This court has not been directed to any evidence that Congress intended an exemption for 'close enough.'") Because DCPS has blatantly disregarded those requirements, DCPS has failed to file any response in accordance with 20 U.S.C. § 1415(2)(B)(i)(I).

The IDEA does not specify the remedy for a failure to serve a response, but the United States Court of Appeals for the District of Columbia Circuit has ruled that where the IDEA is silent regarding a procedural rule, the most closely analogous state rule must

be applied. See Spiegler v. Dist. of Columbia, 866 F.2d 461 (D.C. Cir. 1989)(applying local limitations period for appeals of administrative decision to federal actions brought following adverse administrative decisions under predecessor to IDEA). The state rules most closely analogous to this situation are District of Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a), which provide the remedy for a civil defendant's failure timely to file an answer to a complaint. Because those rules require that a court enter a default in the event that a defendant fails timely to file an answer, the hearing officer should have granted the Plaintiff a default for DCPS' failure to serve a response.

### A.     DCPS Failed to Serve a Response as Required by the IDEA.

The IDEA makes perfectly clear the requirement of a response to a due process complaint, and this court has enforced that requirement. There is no reasonable argument that DCPS' Response fulfilled the legal requirements.

#### 1.     A response was required.

The IDEA requires that:

> [i]f the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response[.]

20 U.S.C. § 1415(c)(2)(B)(i)(I).

As noted above, the due process complaint contained six claims: "[f]ailure to provide an appropriate placement…[f]ailure to conduct and review evaluations in all areas of suspected disability…[f]ailure to determine an appropriate disability classification…[f]ailure to develop appropriate IEPs…[f]ailure to provide necessary special education and related services[and] …[f]ailure to provide ESY[.]" (R. at 191.)

Prior to the filing of the complaint, DCPS had not given Ms. Sykes a prior written notice conforming to IDEA requirements and regarding the subjects of the complaint such that it would be excused from the response requirement. The notices issued, three regarding Kimball and one regarding Kelly Miller, regard only those placements; they do not at all address Plaintiff's evaluation and classification claims, and her claims that the IEPs were not appropriate and that D.B. had not received all of his instruction and services. (R. at 64, 82, 120, 131.)

Moreover, even as they relate to the placement claims, the notices plainly fail to provide all of the information required in a prior notice under 20 U.S.C. § 1415(c)(1). None of them contains an explanation of the basis for the determination, if any, that each school was appropriate for D.B.. (R. at 64, 82, 120, 131.) None of them contains a description of evaluations, procedures, assessments, records, and/or reports that DCPS used as a basis for its decision. (R. at 64, 82, 120, 131.) None of them contains a description of other schools considered and the reason why they were rejected. (R. at 64, 82, 120, 131.)[3]

It is worth noting that DCPS admitted, in its Response, that "DCPS did not issue an MDT Prior to Action Notice," and that in denying the Motion for Default, the hearing officer did not find that a prior notice had been sent. Exhibit 1; (R. at 168.).

---

[3] The inadequacies of DCPS' standard prior notice form, which provides almost no space for explanation of DCPS' actions, have drawn this Court's attention before. "Nowhere on the form does DCPS explain…whether it even considered [] other placements before making the placement…what its basis was for placing [the student]…or what other factors might be relevant to DCPS' action." Massey, 400 F. Supp 2d at 72-3.

Because DCPS had no issued a prior notice in compliance with 20 U.S.C. § 1415(c)(1) regarding the subject matter contained in the parent's due process complaint, DCPS was required to serve a response.

        2.      <u>DCPS' Response Did Not Meet The Requirements of 20 U.S.C. 1415(c)(2)(B)(i)(I).</u>

In the absence of a prior notice, DCPS served a document intended as a response, but the Response does not remotely comply with the IDEA. (R. at 185.) The IDEA requires that a response contain:

> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
> (cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
> (dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I). The Response in this case contains a general denial of all of the Plaintiff's claims, as well as specific denials of some claims, but it lacks all of the information required by law.

The Response does not include: an explanation of why DCPS made its evaluation, IEP, placement, and other decisions; a description of other options DCPS considered and the reasons why those options were rejected; a description of each evaluation procedure, assessment, record, or report upon which DCPS based those decisions; or a description of the factors that are relevant to DCPS' decisions. Instead, DCPS merely stated that they had complied with the District of Columbia Municipal Regulations, and then further asserted that they were not necessarily subject to the IDEA's response requirements. (R. at 185.)

This court directly addressed the IDEA's response requirement in <u>Massey</u>:

> Under the statute, if DCPS had not previously issued a Prior Notice…, it was required to respond in writing to the request for a due process hearing. Furthermore, DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA….[T]he IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate.
> ***
> Congress' delineation of the four requirements makes clear that general responses are not acceptable.

400 F. Supp. 2d at 71 (citations omitted).

After rejecting DCPS' claim that it need not comply with the specific response requirements, the court then dismissed DCPS' argument that "any failure to conform to the statute was a mere technical oversight." <u>Id.</u> at 72. To the contrary, the court emphasized:

> It is technical compliance with the law...that gives parents faith that their concerns will be addressed in accord with Congress' intent. Many of the procedural safeguards in the IDEA are extremely technical, spelling out particular deadlines and required content. This kind of detail embodies the purpose of a statute prescribing administrative – i.e., procedural – remedies. . . Does DCPS mean to imply that it is permitted to violate the IDEA as long as the ways in which it does so are minor? This Court has not been directed to any evidence that Congress intended an exemption for "close enough."

<u>Id</u>. (citations omitted).

As in <u>Massey</u>, DCPS here provided none of the information required in a response with regard to any of the Plaintiff's claims. DCPS has therefore failed to serve a response as required by the IDEA.

**B.    The Hearing Officer Should Have Granted a Default.**

In <u>Massey</u>, the court stated that Congress intended there to be a remedy for DCPS' failure to serve a response. <u>See</u> 400 F. Supp. 2d at 73 ("Surely, Congress did not

14

intend for parents to be left with no remedy when the school district fails to observe the procedural safeguards in the IDEA."). Unfortunately, the IDEA is silent on the question of the proper remedy for the failure of a local educational agency ("LEA") to file an appropriate response under 20 U.S.C. § 1415(2)(B)(i)(I).

The federal courts have held that, where the IDEA is silent regarding a procedural rule, the most closely analogous state rule must be applied. In an administrative proceeding under the IDEA, the most closely analogous state rules are the District of Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a), which provide the remedy for a civil defendant's failure timely to file an answer to a complaint.

Because those rules require that a court enter a default when a defendant fails timely to file an answer, the hearing officer should grant the Petitioner a default for DCPS' failure to serve a response.

        1.     <u>In the absence of a clear procedure in the IDEA, the most closely analogous state rules should be applied.</u>

The federal courts have ruled that where the IDEA is silent, the most closely analogous state rule should be applied, provided that the state rule is consistent with the policies of the IDEA. <u>See</u>, <u>e.g.</u>, <u>Spiegler</u>, 866 F.2d 461.

In <u>Spiegler</u>, the Court of Appeals held that the District of Columbia's 30-day statute of limitations for review of agency orders applied to federal cases challenging hearing officers' decisions under the Education of the Handicapped Act ("EHA"), the predecessor to the IDEA. 866 F.2d at 462-470. Congress had not provided a statute of limitations in the text of the EHA, so the Court of Appeals applied the local limitations period because it was closely analogous and consistent with the policies underlying the EHA. <u>Id</u>.

15

The Court in <u>Spiegler</u> applied a two-part analysis: 1) identify the most closely analogous state rule; and 2) determine whether the application of that rule was consistent with the federal policies underlying the EHA. In performing the first part of the analysis, the Court held that a substantive federal claim challenging the findings and decision of an EHA hearing officer was "sufficiently analogous to an appeal from an administrative decision to permit us to borrow the 30-day local limitations period for such appeals." 866 F.2d at 466. In the second part of the analysis, the Court concluded "that a 30-day limitations period, when combined with a duty by the District to inform hearing participants of the short [limitations] period, was not so harsh as to be inconsistent with [the EHA's underlying] policies." <u>Id.</u>

Though the <u>Spiegler</u> Plaintiffs had argued for the application of the District of Columbia's default 3-year statute of limitations, the Court of Appeals found the 30-day limitations period consistent with federal policies: "Because the Act emphasizes the prompt resolution of disputes, we find at the outset that a shorter rather than longer statute of limitations would be more consistent with the policies underlying the Act." <u>Id.</u> at 467.

In keeping with <u>Spiegler</u>, in forming a remedy for DCPS' failure to serve a response to the complaint, the court should determine the state rules most closely analogous to this situation, and should apply them if they are not inconsistent with the federal policies underlying the IDEA.

2.    <u>The state rules most closely analogous to this situation are District of Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a).</u>

Generally, the two best sources for analogous rules in IDEA hearings are the District of Columbia Office of Administrative Hearings Procedural Rules ("OAH rules"), D.C. Mun. Regs. tit. 1 §§ 2800 <u>et seq.</u>, and the District of Columbia Superior Court Rules of Civil Procedure ("Civil Rules").

In <u>Spiegler</u>, the Court of Appeals used the OAH Rules to determine the appropriate statute of limitations period for challenging the findings and decisions of an impartial due process hearing officer. However, because the OAH Rules do not require any response in a state administrative proceeding, they are not applicable to an action initiated under the IDEA, which now requires a response containing very specific information within 10 days of the filing of the complaint. <u>Compare</u> D.C. Mun. Regs. tit. 1 §§ 2813.5 ("[u]nless otherwise ordered, no responsive pleading is required in cases commenced by a request for a hearing.") <u>with</u> 20 U.S.C. § 1415(2)(B)(i)(I) (requiring responses to IDEA complaints and listing necessary elements in a response).

The Civil Rules, on the other hand, deal extensively with every aspect of pleading practice, including the procedures for serving initial and responsive pleadings and the consequences of violations of those procedures. <u>See</u> D.C. Super. Ct. Civ. R. 3, 7, 8, 12 & 55. The Civil Rules dictate the necessary contents of answers, the timelines for filing answers, and the penalties for failure to file. <u>See</u> D.C. Super. Ct. Civ. R. 12 & 55.

Because the OAH rules do not require responsive pleadings and the Civil Rules do, the Civil Rules contain the rules most closely analogous to the IDEA response

17

requirement. The court should therefore apply the Civil Rules by analogy as long as they are consistent with the federal policies underlying the IDEA.

        3.      <u>By analogy, the Civil Rules required the hearing officer to rule by default for the Plaintiff</u>.

District of Columbia Superior Court Rule of Civil Procedure 12(a)(5) and 55(a) are the state rules most closely analogous to DCPS' failure to serve a response, as argued <u>supra</u>. The rules require that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the Clerk or the Court shall enter the party's default." D.C. Super. Ct. Civ. R. 55(a); <u>see also</u> D.C. Super. Ct. Civ. R.12(a)(5) ("Except where the time to respond to the complaint has been extended as provided in Rule 55(a), failure to comply with the requirements of this Rule shall result in the entry of a default by the Clerk or the Court <u>sua</u> <u>sponte</u> unless otherwise ordered by the Court.")

The courts do not have any discretion in the entry of a default for failure to respond to a complaint; "the Clerk or the Court shall enter the party's default." D.C. Super. Ct. Civ. R. 55(a). The comment to Rule 12 makes clear the intent that default be automatic in those circumstances. <u>See</u> D.C. Super. Ct. Civ. R. 12, cmt ("[P]aragraph (5) has been added to preserve the existing Superior Court rule of automatic entry of default against a defendant who does not timely respond to the complaint.").

The District of Columbia Court of Appeals has addressed this issue, and has enforced the clear text of the Rules in favor of automatic and non-discretionary default. <u>See</u> <u>Digital Broadcast Corp. v. Rosenman & Colin, LLP</u>, 847 A.2d 384, 388-89 (D.C. App. 2004) (holding that Rule 55(a) default is automatic and non-discretionary); <u>Restaurant Equip. and Supply Depot, Inc. v. Gutierrez</u>, 852 A.2d 951, 954-56 (D.C. App.

2004) (holding that default for failure to file answer was automatic even where defendant had filed motion to dismiss).

An entry of default is not a final judgment terminating a proceeding. "[T]he entry of default does not constitute a judgment, but simply precludes the defaulting party from offering any further defense on the issue of liability." Lockhart v. Cade, 728 A.2d 65, 68 (D.C. 1999). "[T]he defaulted party retains the right to contest and mitigate unliquidated damages." Digital, 847 A.2d at 389 n.7. In other words, the default resolves all liability questions against the defaulting party, but does not determine ultimate relief.

Because the serving of a "response" under the IDEA is a perfect analogue to the filing of an answer under the Civil Rules, and DCPS has in this case failed to serve a response, by analogy to the Civil Rules the hearing officer should have issued the equivalent to a default against DCPS. The equivalent to a default in IDEA administrative hearings is a finding, as a matter of law, that DCPS has committed all of the violations identified in the Complaint. From that finding, the hearing could then proceed, if necessary, on the question of remedy.

    4.    <u>An order of default after DCPS has failed to serve a response is wholly consistent with the policies underlying the IDEA in that it protects the rights of children, encourages prompt resolution of disputes, promotes administrative efficiency and preserves procedural equity.</u>

The application of the Civil Rules to this situation and the consequential order of default against DCPS comports with the policies underlying the IDEA.

The primary purposes of the IDEA are "to ensure that all children with disabilities have available to them a free appropriate public education" and "to ensure that the rights

of children with disabilities and parents of such children are protected." 20 U.S.C. §
1400(d)(1).

Additionally, it is clear from the statute and the caselaw that certain policies
underlie the procedural aspects of the IDEA. In Spiegler, the Court of Appeals noted that
Congress' intent in passing the EHA was "to ensure the prompt resolution of disputes
regarding the appropriate education for handicapped children." 866 F.2d 461, 467. The
amendments to the IDEA effective in 2005, most notably the clauses regarding the
complaint, the response and the resolution session, indicate a Congressional intent to
improve administrative efficiency by narrowing issues and limiting unnecessary hearings.
See 20 U.S.C. § 1415(b)(6), (c)(2)(B)(i)(I) & (f)(1)(B). Finally, Congress' respect for the
adversarial process and intent to establish basic procedures to ensure fairness in hearings
can be found in the IDEA's right to counsel, right to disclosure of evidence, right to
subpoena, right to cross-examination, right to attorneys' fees, the new clauses enabling
the dismissal of inadequately drafted complaints, and the new provisions regarding the
training and competence of hearing officers. See 20 U.S.C. § 1415(c)(2)(A), (f)(3)(A) &
(h).

These four purposes – protection of the rights of children with disabilities, prompt
resolution of special education disputes, administrative efficiency and procedural fairness
– are all furthered by an order of default against DCPS for failing to serve a response.

Obviously, a ruling in favor of a parent or child, particularly a ruling that prevents
the LEA from violating the IDEA and sandbagging a petitioner at hearing, helps to
protect the rights of children with disabilities. It is equally obvious that a default for
failure to respond to a complaint furthers prompt resolution and administrative efficiency,

both in the short term, in that the parties and the hearing officer are not forced to litigate issues regarding which DCPS has offered no defense, and in the long term, in that DCPS will be more likely to serve a proper response in future cases.

The impact of a default on procedural equity deserves a bit more consideration, because the recent amendments to the IDEA have changed the balance of procedural obligations. Under the old version of the law, a petitioner needed only to file a minimal hearing request, and DCPS did not need to file a response. Under the current version of the law, by the time DCPS has failed to serve a response and thereby made itself subject to default, a petitioner has had to file a substantially more comprehensive complaint, which has had to withstand a judgment of its sufficiency. See 20 U.S.C. § 1415(b)(7) & (c)(2)(D). If the complaint is found sufficient, the petitioner is granted a hearing, but cannot raise any issue not identified in the complaint. See 20 U.S.C. § 1415(f)(3)(B). While petitioners now bear that new burden, DCPS bears a new burden of its own – the response to the complaint.

A default against an LEA for failure to serve a response would enforce the policy of procedural fairness evident in the IDEA's new requirements of a reciprocal information exchange prior to the resolution session and the hearing. To decline to issue a default would confound Congress' clear intent to require LEAs to provide the same level of information that petitioners must provide, and would create a fundamentally unfair system in which a petitioner is denied his/her opportunity to make a case if he/she fails to provide information according to IDEA procedure, but an LEA is allowed to make its case in the opposite situation.

Finally, a default for a failure to serve a response is often vital to the preservation of procedural equity, now that the burden of proof in IDEA hearings is on the complaining party. Prior to the Supreme Court's decision in <u>Schaffer v. Weast</u>, the burden of proof in IDEA hearings in the District of Columbia rested on the LEA, regardless of who brought the complaint. 546 U.S. 49 (2005). Shortly after the Court in <u>Schaffer</u> established the default rule that the complaining party bears the burden of proof in IDEA hearings, the District of Columbia modified its regulations to place the burden on the petitioner. [4] <u>See</u> D.C. Mun. Regs. tit. 5  3030.3; 546 U.S. 49.

As a result, the petitioner – almost always a parent – is largely dependent upon the Response in the preparation of his or her case. In fact, the Court in <u>Schaffer</u> specifically relied on the response requirement in the IDEA in making its decision, when it rejected "[t]he ordinary rule, based on consideration of fairness, [that] does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary," because the IDEA provides parents with several avenues to information, including the response. 546 U.S. 49, 126 S. Ct. 528, 536-37 (internal quotations and citations omitted).

For all of these reasons, the hearing officer erred when he denied the Plaintiff relief for DCPS' failure to serve an adequate response.

## II.    THE HEARING OFFICER ERRED IN DENYING THE REQUEST FOR INFERENCES BASED ON DCPS' FAILURE TO PROVIDE ACCESS TO SCHOOL RECORDS

As noted at the hearing and in the HOD, the Plaintiff made timely and proper requests for access to D.B.'s records, but DCPS never responded. (R. at 18, 158, 161;

---

[4] As noted above, Statutory Framework, at the time the Plaintiff filed her due process complaint, DCPS bore the burden of proof. Nonetheless, the Congressional intent regarding the response requirement, as interpreted by the Supreme Court, is consistent with the application of the default rules..

Hr'g Tr. 65.) DCPS again failed to provide these documents in its five-day disclosures pursuant to 34 C.F.R. § 300.512(b).

The IDEA guarantees parents of a child with a disability the right to examine all records relating to that child. See 20 U.S.C. § 1415(b)(1). Failure to provide records in response to requests seriously impairs the ability of parents to participate in decisions regarding the education of their children, and thwarts Congress' clear intent to involve parents in the decision-making process. See Amanda J. v. Clark County School District, 267 F.3d 877, 893 (9th Cir. 2001) (holding that "by failing to disclose Amanda's full records to her parents once they were requested…the District denied Amanda a FAPE").

As it relates to the hearing process, the refusal to produce records eliminates one of the IDEA's key "protections [to] ensure that the school bears no unique informational advantage." Schaffer, 546 U.S. 49, 126 S. Ct. 528, 537. Given that DCPS denied Ms. Sykes virtually all of the other field-leveling information – the response and the disclosure of documents – their refusal to produce documents contributed to the obliteration of most of the Plaintiff's due process protections at hearing. See id. At 536-37 (listing the four ways in which parents may access information under the IDEA).

At the start of the hearing, Plaintiff's counsel requested inferences, based on DCPS' failure to provide access to D.B.'s report cards, progress reports, encounter tracking forms, and test results, that D.B. had not received his prescribed instruction and services at Kimball and had not progressed academically while there. (Hr'g Tr. 8-9.) Later, the Plaintiff objected to any testimony addressing issues to which the undisclosed documents would have been relevant. (Hr'g Tr. 46-47, 59-60.) The Hearing Officer ignored those pleas, other than to "note" them. (Hr'g Tr. 47, 60.)

Because the requested records were properly requested, relevant to the issues at the hearing, and within the control of the Defendants, and because the absence of those documents greatly inhibited the Plaintiff's ability to make her case and the Hearing Officer's ability to make his decision, the Hearing Officer should have held DCPS accountable, made appropriate inferences in the Plaintiff's favor, and prohibited DCPS from offering contrary evidence.

## III.    THE HEARING OFFICER ERRED IN ALLOWING HEARSAY

The entirety of DCPS' case that Kimball had been an appropriate placement for D.B. and that he had received his instruction and services there consisted of hearsay testimony from Ms. Rabb. Ms. Rabb acknowledged that she personally had never provided D.B. any instruction or related services. (Hr'g Tr. 60.)

Plaintiff's counsel objected to Ms. Rabb's testimony on multiple, related bases: that it was hearsay; that it in part violated the best evidence rule; and that it violated parental rights to documents to the degree that the testimony related to documents not provided to Ms. Sykes in response to her pre-hearing request for documents. (Hr'g Tr. 52-53.) Without explanation at the hearing or in the HOD, the Hearing Officer allowed all of Ms. Rabb's testimony over this objection.

In the HOD, the Hearing Officer relied entirely on Ms. Rabb's testimony in finding that DCPS had provided D.B. with his prescribed specialized education while he was at Kimball, and that Kimball had been an appropriate placement. (Hr'g Tr. 21.)

The Hearing Officer's admission of extensive hearsay from Ms. Rabb, and his reliance on that hearsay alone in his determinations, violated Ms. Sykes' IDEA right to

confront witnesses and the IDEA's requirement of the disclosure of evidence prior to a due process hearing.

### A.  The Admission of Hearsay Violated the Plaintiff's IDEA Right to Confront and Cross-Examine Witnesses.

The IDEA does not explicitly prohibit hearsay in hearings, but it does grant each party "the right to…confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2). That language obviously originates in the Confrontation Clause, which requires that "In all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. amend. VI.

The Confrontation Clause has always been held to "bar[] the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." Idaho v. Wright, 497 U.S. 805, 814 (1990); citing California v. Green, 399 U.S. 149, 155-56 (1970); Bruton v. United States, 391 U.S. 123 (1968); Barber v. Page, 390 U.S. 719 (1968); Pointer v. Texas, 380 U.S. 400, 407 (1965). The IDEA's confrontation clause should accordingly be interpreted to bar the admission of some evidence despite the absence of a specific hearsay prohibition.

Before allowing hearsay under the Confrontation Clause, the courts place two requirements on the hearsay to be admitted: the declarant must be shown to be unavailable, and the declaration must be shown to be reliable. See Wright, 497 U.S. at 814-815. The state bears the burden of proving the unavailability of the declarant.[5] See id. The reliability of the declaration "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must

---

[5] The Confrontation Clause protects defendants in criminal cases, so the state is of course always the party seeking admission in Confrontation Clause cases.

be excluded, at least absent a showing of particularized guarantees of trustworthiness."
Ohio v. Roberts, 448 U.S. 56, 66 (1980) (footnote omitted).

There is no reason not to apply this same analysis to situations implicating the IDEA's right to confront and cross-examine. In the case at bar, all of the hearsay failed to meet the unavailability requirement, and at least most of it failed to meet the reliability requirement.

DCPS made no attempt to establish the specific basis of Ms. Rabb's alleged knowledge of instruction received by D.B. at Kimball or her alleged knowledge of his progress there.[6] There was some testimony regarding Ms. Rabb's relationship with service providers and familiarity with records, but no identification of specific statements or documents supporting Ms. Rabb's very general contention that D.B. had received his instruction and services and had made progress.

Given that DCPS failed to establish the roots of Ms. Rabb's testimony at all, her testimony regarding receipt of instruction and progress, which was unquestionably hearsay, cannot be said to have met either prong of the Confrontation Clause test. There is no suggestion that the original declarant, declarants, and/or documents were unavailable. There is of course no indication of the "particularized guarantees of trustworthiness" of the original statements necessary to meet the second prong of the Confrontation Clause test. Roberts, 448 U.S. at 66.

---

[6] DCPS did establish that Ms. Rabb based her statements regarding the provision of "services" on her reading of "Medicaid records," also known as "encounter tracking forms." In the HOD, the Hearing Officer took notice of the well known fact that encounter tracking forms are used only for related services, not specialized instruction. (R. at 21 ("The Hearing Officer takes administrative notice there are no comparable tracking forms for the provision of specialized instruction.").)

**B. The Admission of the Hearsay Effectively Violated the Plaintiff's Right to Bar the Introduction of Undisclosed Evidence.**

Every party to a hearing has the absolute right to "[p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at five business days before the hearing[.]" 34 C.F.R. § 300.512(a)(3).

DCPS disclosed no documents prior to the hearing. Instead, DCPS relied entirely on Ms. Rabb's hearsay testimony. As discussed above, DCPS never established the original alleged bases of Ms. Rabb's testimony, so it is impossible to say to what degree her testimony was based upon documents not disclosed. To the degree that the testimony was based upon such documents, the admission of that testimony over objection violated Ms. Sykes' right to bar the introduction of evidence not disclosed in advance of the hearing.

## IV. DCPS DID NOT MEET ITS BURDEN OF PROVING THE APPROPRIATENESS OF THE PLACEMENT TO KELLY MILLER

The Plaintiff's due process complaint alleged, <u>inter alia</u>, DCPS' "failure to provide an appropriate placement since the start of the 2003-2004 SY" and further alleged that "[a]t a May 9, 2006 MDT meeting, DCPS…issued a prior notice placing [D.B.] at Kelly Miller Middle School…DCPS' proposed placement at Kelly Miller MS is not appropriate." (R. at 191-3.)

At the hearing, DCPS' counsel presented no evidence of Kelly Miller's appropriateness, stating:

> "I can call the Special Education Coordinator at Kelly Miller where the student is being proposed placed for the '06-'07 school year, but even without conceding, Kelly Miller is inappropriate. [sic] A placement cannot be rendered. It is DCPS's position that a placement – what placement option if DCPS cannot present Kelly Miller being appropriate based on this IEP, could the hearing officer award other than returning to a MDT meeting."

27

(Hr'g Tr. 13.)

The Hearing Officer found that, at the May 9, 2006 meeting at which DCPS had placed D.B. at Kelly Miller, there had been "no one...to discuss Kelly Miller as the placement." Nonetheless, the Hearing Officer specifically refused to rule on the Kelly Miller placement because "the original complaint did not allege the student's 2006-07 placement at Kelly Miller was inappropriate such that DCPS was required to prove the appropriateness of Kelly Miller." (R. at 19, footnote 8.) The Hearing Officer maintained that position even after the Plaintiff, in her Motion for reconsideration, pointed to the specific language in the due process complaint alleging that "DCPS' proposed placement at Kelly Miller MS is not appropriate." (R. at 11-13, 193.)

It is unclear why the Hearing Officer though that the due process complaint had not raised an issue with the Kelly Miller placement, when DCPS clearly understood that it had. In its disclosure statement, DCPS listed the "Special Education Coordinator, or designee(s)" from Kelly Miller as potential witnesses for the hearing. (R. at 33.) At the hearing, DCPS counsel specifically addressed the question of Kelly Miller's appropriateness and the claim for immediate placement. (See Hr'g Tr. 13.)

Even stranger, the Hearing Officer heard testimony at the hearing from Keren Plowden, a representative of a private school to which Ms. Sykes sought immediate placement for D.B.. If the Hearing Officer believed that the placement at Kelly Miller – D.B.'s then-current placement – was not at issue in the hearing, it is inconceivable why he heard Ms. Plowden's testimony.

DCPS offered no evidence at the hearing to supplement its Prior to Action Notice placing D.B. at Kelly Miller, and did not meet its burden of proof in justifying its

decision to place D.B. at Kelly Miller. DCPS failed to produce any evidence that its placement of D.B. at Kelly Miller was "reasonably calculated to enable the child to receive educational benefits." 458 U.S. at 206-207. DCPS simply made no effort to defend the current placement, at Kelly Miller.

The complaint alleged that the Kelly Miller placement was inappropriate. DCPS acknowledged that claim in its disclosure statement and at the hearing. The Plaintiff made clear her intention to secure an immediate change in placement at the hearing. DCPS, which bore the burden of proving Kelly Miller's appropriateness, offered no evidence in support. Accordingly the Hearing Officer should have held that Kelly Miller was an inappropriate school placement for D.B..

## V.    DCPS DID NOT MEET ITS BURDEN IN PROVING THAT D.B. RECEIVED HIS PRESCRIBED SPECIALIZED INSTRUCTION AT KIMBALL

DCPS was required to show, by a preponderance of the evidence, that D.B. had received all the necessary specialized instruction and related services on his IEP while at Kimball for the 2004-2005 and 2005-2006 school years.

As addressed above, Argument II, DCPS ignored Ms. Sykes' pre-hearing request for school records that would have established, to a great degree, whether D.B. had received his prescribed specialized instruction. DCPS further declined to produce such records at the hearing. Instead, as addressed in Argument III above, DCPS presented only the testimony of an individual who had never provided D.B. any instruction or services prescribed in his IEP. (Hr'g Tr. 60.) On the basis of this testimony, and this testimony alone, the Hearing Officer concluded that D.B. had received his prescribed specialized instruction. The Hearing Officer further noted that the record contained no evidence

contradicting Ms. Rabb's testimony, while declining to note that DCPS had illegally refused to relinquish such evidence.

Because, for the reasons presented above in Arguments II and III, the only evidence presented by DCPS should be stricken, the Court should find that DCPS failed to meet its burden of proving that D.B. received his prescribed specialized instruction from December 2004 through June 2006, the period in question at the hearing.

## VI.    DCPS DID NOT MEET ITS BURDEN OF PROVING THAT KIMBALL WAS AN APPROPRIATE PLACEMENT FOR D.B.

In Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley, the Supreme Court identified the method of analysis of special education claims:

> [A] court's inquiry in suits brought under [the IDEA] is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

458 U.S. 176, 206-07 (1982). DCPS' placement of D.B. at Kimball fails both prongs of the Rowley test.

### A.    DCPS Failed to Comply with IDEA Procedure When It Placed D.B. at Kimball and When It Continued that Placement.

As noted above, Argument I, DCPS clearly failed to comply with the IDEA's prior notice procedures when it placed D.B. at Kimball and when it continued the placement each year. The "Prior to Action Notice" forms used for DCPS' placements do not comply with the requirements of 20 U.S.C. § 1415(c)(1), and in this case contain virtually no information with which the Plaintiff could make an informed determination regarding the placement of her child.

DCPS issued three "Prior to Action Notices" initially placing and preserving D.B.'s placement at Kimball. (R. at 64, 82, 120.) None of them complied with the requirement of 20 U.S.C. § 1415(c)(1) that such notices contain:

(A) a description of the action proposed or refused by the agency;
(B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
(C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this part and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
(D) sources for parents to contact to obtain assistance in understanding the provisions of this part;
(E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
(F) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(1).

DCPS' September 17, 2003 notice of initial placement to Kimball did not contain:

- "an explanation of why the agency propose[d]" placement at Kimball (other than "[t]he MDt [sic] convened and determined [D.B.] is eligible for special education as a [sic] emotionally disturbed student who will receive 20 hours of specialized instruction and 1 hour of psychological services.");

- "a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed" Kimball placement;

- "a description of other options considered by the IEP Team and the reason why those options were rejected," (other than "The MDT rejects placement in general education."); or

31

- "a description of the factors that [were] relevant to the agency's proposal" of Kimball (other than "need for related services").

(R. at 64.)

Similarly, DCPS' May 12, 2004 notice renewing D.B.'s placement at Kimball did not contain:

- "an explanation of why the agency propose[d]" continuing the Kimball placement (other than "Continued services in combination general and special education as a student with ED.");

- "a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed" continued placement;

- "a description of other options considered by the IEP Team and the reason why those options were rejected," (other than "Out of general education rejected due to negative impact on self-esteem, overly restrictive. In general education does not meet the student's needs."); or

- "a description of the factors that [were] relevant to the agency's proposal" of Kimball.

(R. at 82.)

DCPS' May 24, 2005 notice again renewing D.B.'s placement at Kimball again did not contain:

- "an explanation of why the agency propose[d]" Kimball (other than "Based on the documentation and team discussion [D.B.'s] disability was changed from ED to MD(LD/OHI) He requires specialized instruction and related services in a combination setting");

- "a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed" continued placement at Kimball (other than "current assessment");

- "a description of other options considered by the IEP Team and the reason why those options were rejected," (other than "Placement in general ed was rejected."); or

- "a description of the factors that [were] relevant to the agency's proposal" of Kimball.

(R. at 120.)

As noted above, DCPS stated in its Response that it had not issued an MDT Prior to Action Notice, and at did not, at any point, contend that the September 17, 2003, May 12, 2004, or May 24, 2005 notices constituted a prior written notice under 20 U.S.C. § 1415(c)(1). (R. at 185.)

"Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP which addresses the unique needs of the child cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed." Amanda J., 267 F. 3d at 892.

### B.    DCPS Did Not Meet Its Burden of Proving that Kimball Had Been An Appropriate Placement For D.B..

As addressed at length above, at the hearing, DCPS' only evidence that D.B. had received his instruction and services while at Kimball and that he progressed academically while there was Ms. Rabb's hearsay testimony. For the reasons presented in Arguments II, III, and V above, that testimony should be given absolutely no credence.

On that basis alone, DCPS failed to meet its burden of establishing that Kimball had been an appropriate placement for D.B..

Despite DCPS efforts to withhold all evidence, there was evidence at the hearing of Kimball's inappropriateness. The Hearing Officer correctly noted that DCPS had failed to provide evidence showing that D.B. had received his prescribed counseling services while at Kimball. (R. at 21.) The Hearing Officer further concluded that DCPS had denied D.B. FAPE by failing to maintain appropriate IEPs. (R. at 20-21.) The Plaintiff also testified to the inadequate counseling services and further testified that D.B. had had multiple disciplinary problems and had suffered academically. (R. at 67-8.)

Given the existence of evidence of Kimball's multiple failures in their responsibility to D.B., and in the face of DCPS' refusal to provide Ms. Sykes with information regarding D.B.'s education there, the Hearing Officer should have concluded that DCPS had failed to meet its burden of proving that D.B.'s placement as Kimball was "reasonably calculated to enable the child to receive educational benefits." 458 U.S. at 206-207.

## VII.    ROCK CREEK ACADEMY IS AN APPROPRIATE PLACEMENT FOR D.B.

Having failed to meet its burden, or even to attempt to meet the burden, of establishing that Kelly Miller, the current placement, was appropriate, DCPS bore the burden of proving that Rock Creek Academy, Ms. Sykes' chosen placement, was inappropriate in the absence of an alternative. DCPS presented nothing to meet that burden. Instead, DCPS contended, and the Hearing Officer apparently concluded, that Rock Creek was an unacceptable placement on the basis that it was not the "least restrictive environment" as recommended by 20 U.S.C. 1412(5).

However, as courts have noted, the least restrictive environment determination is necessarily secondary to finding an appropriate placement. See e.g. Hartmann vs. Loudoun County Bd. of Ed. 118 F.3d 996 (4th Cir. 1997) ("The IDEA encourages mainstreaming, but only to the extent that it does not prevent a child from receiving educational benefit.") This comports perfectly with the language of the "LRE" provision: "Each public agency must ensure that…[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled[.]" 34 C.F.R. § 300.114(a)(2) (emphasis added).

The Plaintiff's difficulty in finding an appropriate placement for her child was made considerably more difficult as a result of DCPS' failures to disclose records, to perform and disclose necessary evaluations, and to properly develop and revise IEPs. As a result, the Plaintiff was only able to consider placement options based on the limited information available to her. D.B.'s available evaluations indicate that he needs a small class size and a year-round therapeutic setting. (R. at 42, 90, 98.) The transcript of the hearing contains ample testimony from Rock Creek Academy's Executive Director of Student Services regarding Rock Creek's ability to provide appropriate instruction, a small class size, and a therapeutic environment for D.B.. (Hr'g Tr. 76-83.)

Even if Rock Creek were not the "least restrictive environment," that fact alone would not invalidate it in this case. As the Supreme Court noted in Florence County Sch. Dist. Four, et al. v. Carter, "it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system

35

that failed to meet the child's needs in the first place." 510 U.S. 7, 14 (1993) (quoting

Florence County v. Carter, 950 F.2d 156, 164 (1991).[7]

The rejection of the guardian's chosen placement is particularly unjust in this

case, in which DCPS nearly absolute refusal to comply with IDEA procedure left Ms.

Sykes' with almost no information about D.B. or his schooling. The Hearing Officer's

turn the absence of information against Ms. Sykes, as he did when he noted that "[t]here

are no current evaluations from which the Hearing Officer can discern the appropriate

placement for the student," was grossly unfair under the circumstances. (R. at 21-22.)

Inasmuch as the Hearing Officer denied the Plaintiff's requested placement on the basis

of DCPS' failure to conduct or produce relevant evaluations, he misapplied the burden of

proof and erred in determining that Rock Creek was not an appropriate placement.

## CONCLUSION

The Hearing Officer ignored DCPS' failure to serve an adequate response to the

due process complaint, excused its failure to provide access to school records, and

sanctioned its use of hearsay testimony that the Hearing Officer himself had made

invulnerable when he endorsed DCPS' total restriction of information. Then, to complete

the Orwellian perversion of the term "due process hearing," the Hearing Officer ruled

that the Plaintiff had failed to meet a burden she shouldn't have borne, because she did

not have the evidence that DCPS had illegally withheld from her. For all of the reasons

stated herein, the Court should grant the Plaintiff summary judgment and order the relief

requested.

---

[7] In Carter, the Supreme Court concluded that the IDEA's definition of "free appropriate public education" was not a requirement for parental placements. In this case, the parent's requested placement to Rock Creek is appropriate both under the IDEA as well as the District of Columbia's standards.

Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

# TABLE OF AUTHORITIES

**Cases**

*__Amanda J. v. Clark County Sch. Dist.__, 267 F. 3d 877 (9th Cir. 2001) ………….23, 33

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).......................................................9

Barber v. Page, 390 U.S. 719 (1968)…………………………………………………….25

*__Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v.__
__Rowley__, 458 U.S. 176 (1982)..........................................................8, 29, 30, 32, 34

Bruton v. United States, 391 U.S. 123 (1968)…………………………………...……...25

California v. Green, 399 U.S. 149 (1970)…………………………………...……………25

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)……………………………………...........9

Digital Broadcast Corp. v. Rosenman & Colin, LLP, 847 A.2d 384 (D.C. App.
2004)....................................................................................................................18, 19

Florence County Sch. Dist. Four, et al. v. Carter, 510 U.S. 7 (1993)…………………..36

Hartmann vs. Loudoun County Bd. of Ed. 118 F.3d 996 (4th Cir. 1997)……………32, 35

Honig v. Doe, 484 U.S. 305 (1988)……………………………………………………….7

Idaho v. Wright, 497 U.S. 805 (1990)……………………………………………………25

Kerkam v. McKenzie, 862 F.2d 884 (D.C. Cir. 1988)....................................................10

Kroot v. D.C., 800 F. Supp. 976 (D.C.C. 1992).............................................................10

Lockhart v. Cade, 728 A.2d 65 (D.C. 1999)………………………………………...…..19

*__Massey v. District of Columbia__, 400 F. Supp. 2d 66 (2005)…………..…...4, 10, 12 14-15

Ohio v. Roberts, 448 U.S. 56, 66 (1980)……………………………………...………25, 26

Pointer v. Texas, 380 U.S. 400, 407 (1965)……………………………………...……25

Restaurant Equip. and Supply Depot, Inc. v. Gutierrez, 852 A.2d 951 (D.C. App.
2004)……………………………………………………………………………18-19

*__Schaffer v. Weast__, 546 U.S. 49 (2005)..................................................................22, 23

Scorah v. District of Columbia, 322 F. Supp. 12 (D.D.C. 2004)…………............……..10

*__Spiegler v. Dist. of Columbia__, 866 F.2d 461 (D.C. Cir. 1989)…………................__passim__


**Statutes and Regulations**

20 U.S.C. § et seq.................................................................................................__passim__

34 C.F.R. § 300.114……………………………………………………………...……35

34 C.F.R. § 300.300.........................................................................................................7

34 C.F.R. § 300.512(a)(3)...........................................................................................9, 23, 27

34 C.F.R. § 300.613(a)…………………………………………………………………….8

Fed. R. Civ. P. 56(c)…………………………...………………………………………1, 9

D.C. Super. Ct. R. Civ. P. 55(a)……………………...…………………...…11, 15, 17, 18

D.C. Super. Ct. R. Civ. P. 12(a)(5)……………………..…………………......11, 15, 17, 18

D.C. Mun. Regs. tit. 1 §§ 2800 et seq.……………….…………………………...……17

D.C. Mun. Regs. tit. 5 § 3030.3.……………………………......................……….10, 22

U.S. Const. amend. VI………………………………………………………….……….25

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| EVELYN SYKES, | ) |
|          **Plaintiff,** | ) |
|  | )    **Civil Action No. 07-255** |
| **v.** | )    **RCL** |
|  | ) |
| **DISTRICT OF COLUMBIA,** | ) |
|          **Defendant.** | ) |

_____

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  Ms. Sykes' grandson D.B. is a twelve year-old boy who has been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"), Fetal Alcohol Syndrome, and Emotional Disturbance. (R. at 42, 110.)

2.  Multiple evaluations have recommended that D.B. be provided a small class size in a year-round therapeutic setting. (R. at 42, 90, 98.)

3.  DCPS placed D.B. at Kimball Elementary School ("Kimball") in a "combination" general education and special education setting on September 17. 2003. (R. at 64.)

4.  D.B. remained at Kimball until May 9, 2006 when DCPS changed D.B.'s placement to Kelly Miller Middle School ("Kelly Miller"), in a combination setting effective for the 2006-2007 school year. (R. at 131.)

5.  DCPS placed D.B. at Kelly Miller because it was believed to be his home school. (Hr'g Tr. 58, Aug. 23, 2006.)

6.  For each placement determination it made, DCPS issued a "Prior to Action Notice" regarding the placement. (R. at 64, 82, 120, 131.)

7.  When initially placing D.B. at Kimball on September 17, 2003, DCPS did not provide Ms. Sykes with a written prior notice explaining the basis for its determination, if any, that Kimball was appropriate for D.B., a description of evaluations, procedures, assessments, records, and/or reports that DCPS used as a basis for its decision or a description of other schools considered and the reason why they were rejected. (R. at 64.)

8.  When renewing D.B.'s placement at Kimball on May 12 2004, DCPS did not provide Ms. Sykes with a written prior notice explaining the basis for its determination, if any, that Kimball was appropriate for D.B., a description of evaluations, procedures, assessments, records, and/or reports that DCPS used as a basis for its decision or a description of other schools considered and the reason why they were rejected. (R. at 82.)

9.  When renewing D.B.'s placement at Kimball on May 24 2005, DCPS did not provide Ms. Sykes with a written prior notice explaining the basis for its determination, if any, that Kimball was appropriate for D.B., a description of evaluations, procedures, assessments, records, and/or reports that DCPS used as a basis for its decision or a description of other schools considered and the reason why they were rejected. (R. at 120.)

10. When placing D.B. at Kelly Miller on May 9, 2006, DCPS did not provide Ms. Sykes with a written prior notice explaining the basis for its determination, if any, that Kelly Miller was appropriate for D.B., a description of evaluations, procedures, assessments, records, and/or reports that DCPS

used as a basis for its decision or a description of other schools considered and the reason why they were rejected. (R. at 131.)

11. DCPS decided to place D.B. at Kelly Miller at a May 9, 2006 MDT meeting at which no attendee was able to explain Kelly Miller's program to Ms. Sykes or discuss D.B.'s placement there. (R. at 17, 121.)

12. The Plaintiff filed an IDEA due process complaint on June 16, 2007. (R. at 191-3.)

13. DCPS filed a "Response to Due Process Complaint Notice" on June 27, 2006. Exhibit 1. [1]

14. DCPS did not issue any other document in addition to the "Response to Due Process Complaint Notice" intended to serve as a response under the IDEA. (R. at 33; Exhibit 1.)

15. On June 28, 2006, the Plaintiff filed a written motion for default judgment based on DCPS' failure to serve an adequate response in compliance with 20 U.S.C. § 1415(c)(2)(B)(i)(I). (R. at 169.)

16. On June 28, 2006, an order was issued denying the Plaintiff's motion for default judgment. (R. at 168.)

17. Prior to the due process hearing for the June 16 Complaint, Plaintiff's counsel submitted a request for access to student records to Kimball's Special Education Coordinator, but received no documents or any response indicating the availability of such documents. (R. at 4, 158; Hr'g Tr. 65, Aug. 23, 2006.)

18. A due process hearing was convened on August 23, 2006. (R. at 27.)

---

[1] The Plaintiff attaches this exhibit, the full two-page Response, because the second page is absent from the copy of the Response in the record as filed.

19. Prior to the hearing, counsel for the parties exchanged "five-day disclosures." (R. at 33-36.)

20. At the hearing, the Hearing Officer admitted 27 documents from the Plaintiff, and the Plaintiff called two witnesses, the Plaintiff and Keren Plowden. (R. at 27, 35-161.)

21. At the hearing, DCPS offered no documents and called one witness, Robin Rabb, the Special Education Coordinator at Kimball. (R. at 27, 33.)

22. Although they had been requested, school records from Kimball and Meeting Notes from the May 2006 meeting at which D.B. was placed to Kelly Miller were not made available to the Plaintiff prior to the hearing. (R. at 4, 158, 161.)

23. At the start of the hearing, the Plaintiff requested inferences based on DCPS' failure to respond to the pre-hearing request for documents, specifically, that the documents not provided "show that [D.B.] has not been receiving services, that he has not been educated adequately during these past three years." (Hr'g Tr. 8-9.)

24. The Hearing Officer did not rule on the Plaintiff's request for inferences at the hearing. (Hr'g Tr. 8-9.)

25. At the hearing, the Plaintiff objected to any testimony addressing issues to which the undisclosed documents would have been relevant. (Hr'g Tr. 46-47, 59-60.)

26. At the hearing, the Plaintiff objected to the bulk of Ms. Rabb's testimony because it was hearsay. (Hr'g Tr. 52-53.)

27. At the hearing, the Hearing Officer allowed, over the objections of Plaintiff's counsel, the testimony from Ms. Rabb. (Hr'g Tr. 47, 58.)

28. The Hearing Officer explicitly relied on Ms. Rabb's testimony in his determination, stating "[t]he Hearing Officer credits Ms. Rabb's testimony with regard to the provision of specialized instruction" and further stated that "there was no testimony or evidence to contradict Ms. Rabb's testimony the student made progress while attending Kimball." (R. at 21.)

29. In the Hearing Officer's Determination ("HOD"), he found that DCPS had denied D.B. free appropriate public education ("FAPE") by failing to provide him with an appropriate IEP since December 2004 and failing to provide him with all of his counseling since December 2004. (R. at 20-21.)

30. On the sole basis of Ms. Rabb's testimony, the Hearing Officer found that D.B. had received all of his prescribed specialized instruction while he was at Kimball, that he had made progress while there, and that Kimball had been an appropriate placement. (R. at 21.)

31. The Hearing Officer acknowledged in his determination that due to the timing of the Plaintiff's complaint, "[p]ursuant to 5 DCMR 3030.3 DCPS bears the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student." (R. at 20.)

32. At the hearing, the Plaintiff presented testimony regarding DCPS' failure to properly propose Kelly Miller as well as testimony and argument regarding

the appropriateness of the Plaintiff's proposed placement, Rock Creek

Academy. (Hr'g Tr. 72, 76-80.)

33. In its disclosure letter, DCPS identified a potential witness from Kelly Miller,

but declined to call that witness at the hearing. (R. at 26, 33.)

34. In his determination, the Hearing Officer did not rule on the appropriateness

of D.B.'s placement at Kelly Miller. (R. at 21-22.)

35. On September 26, the Plaintiff filed a Motion for Reconsideration, requesting

that the Hearing Officer reconsider the issue of D.B.'s placement to Kelly

Miller. (R. at 5.)

36. On November 3, 2006, the Hearing Officer denied the Plaintiff's motion. (R.

at 3.)

Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

_____

Petitioner

v.

District of Columbia Public Schools,
    Respondent

### District of Columbia Public School's
### Response to Due Process Complaint Notice[1]

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney-Advisor, hereby provides its RESPONSE to the Administrative Due Process Complaint Notice (hereinafter "Complaint") filed on behalf of the above captioned student, pursuant to the Individuals with Disabilities Education Improvement Act (hereinafter "IDEIA"), 20 U.S.C. § 1415(c)(2)(B)(i)(I). DCPS responds as follows:

   a.  DCPS DENIES, in general, all allegations contained in the complaint and intends to defend against the complaint;
   b.  DCPS DENIES the allegation that it failed to provide an appropriate IEP. DCPS contends that the IEP was made in accordance with 5 DCMR 3007 and 3009.
   c.  DCPS DENIES the allegation that it failed to identify this child as a child with a disability. DCPS contends that the identification was made in accordance with 5 DCMR 3005.
   d.  DCPS DENIES the allegation that it failed to provide an appropriate placement. DCPS contends that the placement was made in accordance with 5 DCMR 3013.

_____

[1] It is this attorney-advisor's position that a DCPS response is not required in all IDEIA Due Process hearings. Accordingly, DCPS objects to such an expansive reading and practice. The purpose of the prior written notice requirements of IDEIA is to inform the parents in writing of an agency's final action on a proposal or refusal to initiate or change the identification, evaluation, educational placement or the provision of FAPE (procedural safeguards and special education and related services) to a particular student. If a team (e.g., MDT or IEP team) cannot reach consensus or if the parents do not attend the team meeting, the public agency must provide the parents with prior written notice of the agency's proposals and/or refusals. If consensus between the public agency and the parent cannot be reached, prior written notice of proposed or refused actions must be provide to the parents, even if the parents participated in the meeting where the decision(s) was made. Excerpt of Memorandum from the Office of Special Education for the West Virginia Department of Education, dated, June 24, 2004, re: IDEA 2004 Interim Implementation – Prior Written Notice.

e. DCPS **DENIES** the allegation that it failed to complete timely and comprehensive evaluations. DCPS contends that it appropriately evaluated the child in all areas of suspected disability;

f. DCPS **DENIES** the allegation that it violated the "child find" requirement. DCPS contends that it had no reason to suspect this was a child in need of special education services.

g. DCPS **DENIES** the allegation that it failed to provide appropriate special education and related services. The allegation is too vague upon which a more specific answer can be given.

h. DCPS did not issue an MDT Prior to Action Notice. DCPS did not issue a Prior to Action Notice in this case because the allegations within the complaint fail to allege that the agency has proposed or refused to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education to the child, pursuant to IDEIA, § 615(b)(3).

i. DCPS maintains that all other allegations stated within petitioner's complaint require no further prior written notice for the reasons stated above.

Respectfully submitted,

Aaron E. Price, Sr., Esq.
Attorney-Advisor, DCPS

## CERTIFICATE OF SERIVCE

I, Aaron E. Price, Sr., Esq., hereby certify that a copy of this RESPONSE was served on D. Tyrka, parent's counsel, via facsimile, 202-265-4264, on 6/24/06 .

Aaron E. Price, Sr., Esq.
Attorney-Advisor, DCPS

### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____
                                    )
EVELYN SYKES,                       )
                        Plaintiff,  )
                                    )          **Civil Action No. 07-0255**
v.                                  )          **RCL**
                                    )
DISTRICT OF COLUMBIA,               )
                        Defendant.  )
_____)

### ORDER

In consideration of the Plaintiff's Motion for Summary Judgment and any opposition thereto, it is hereby

ORDERED, that the Plaintiff's Motion is granted, and further

DECLARED, that the District of Columbia Public Schools violated the IDEA and denied D.B. free appropriate public education by failing to provide an appropriate special education placement since November 12, 2004 and failing to provide specialized instruction since November 12, 2004, and further

ORDERED, that DCPS shall immediately fund D.B.'s placement at Rock Creek Academy, with transportation; and further

ORDERED, that DCPS shall convene a multidisciplinary team meeting within thirty days of D.B.'s enrollment at Rock Creek Academy, and at that meeting shall review all current evaluations, revise D.B.'s IEP as appropriate, and develop a compensatory education plan to compensate D.B. for the violations and denials identified in this Order.

1

_____
Royce C. Lamberth
United States District Judge