**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
EVELYN SYKES,                              )
Guardian and Next Friend of D.B., a Minor, )
                                           )
        Plaintiff,                         )
                                           )
        v.                                 )     Civil Action No. 07-0255 (RCL)
                                           )
DISTRICT OF COLUMBIA,                      )
A municipal corporation,                   )
                                           )
        Defendant.                         )
_____)

**DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION TO
THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Defendant, by counsel, here responds to the Plaintiff's June 29, 2007, Motion for Summary Judgment. The Plaintiff brought the present action to appeal a September 15, 2006, District of Columbia Public Schools ("DCPS") Hearing Officer's Decision ("HOD") and the subsequent November 3, 2006, HOD on Motion for Reconsideration.

The Defendant's Motion for Summary Judgment, also filed on June 29, 2007, demonstrated that the subject HOD was based soundly on the record before the hearing officer, and was proper under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400, *et seq.* ("IDEIA"). It further showed that the Plaintiff was not an aggrieved party under the IDEIA because she received all of the relief she requested except for a private placement.

Despite receiving a favorable judgment on the merits and almost all of her requested relief, the Plaintiff in her Motion surprisingly revisits procedural issues from

the due process hearing, apparently for the sole purpose of obtaining a private school placement.[1]  Specifically, the Plaintiff challenges the hearing officer's determination: (1) not to issue a default judgment for DCPS' allegedly insufficient response to the administrative complaint; (2) not to give inferences in favor of the Plaintiff where DCPS did not provide access to school records from the outset of the hearing; and (3) to allow the testimony of the DCPS Special Education Coordinator of Kimball Elementary School (which the Plaintiff claims was hearsay).

The Defendant here will demonstrate, as it did in its Motion for Summary Judgment, that the HOD was appropriate.  Because the hearing officer reasonably addressed each of the Plaintiff's claims of procedural violations, this Court should defer to his judgment.  Moreover, even assuming *arguendo* that the hearing officer should have ruled as the Plaintiff hoped on the above procedural matters, he still could not have ordered the relief requested here—a private school placement at Rock Creek Academy— because such a placement was not supported by the record.  At most, this Court could only order what the hearing officer already ordered—completion of new evaluations, and a meeting to discuss those evaluations, to change the IEP where needed, and to determine an appropriate placement and compensatory education plan.  The hearing officer was within his authority when he determined the appropriate relief for violations of the IDEIA, and this Court need not intervene.

---

[1] As indicated in the Defendant's Cross-Motion, a hearing officer cannot award attorneys' fees and costs, but the Plaintiff could seek fees from DCPS for work related to the due process hearing, and has not done so as of the date of filing.  Def. M. at 13, Fn. 6.

## ARGUMENT

**I.     The hearing officer properly addressed placement issues.**

The hearing officer properly considered the placement issues before him.  After reviewing the record, he concluded that there was not sufficient information in the record to determine an appropriate placement for D.B., and ordered DCPS to fund new independent evaluations to clarify the student's current disability classification and special education needs.  R. at 22.  The hearing officer also ordered DCPS to convene a meeting once those evaluations were completed to update his individualized education program ("IEP") as needed, and to determine an appropriate placement and compensatory education plan.  *Id.*

For the school years ("SY") 2003-2004, 2004-2005, and 2005-2006, D.B. attended Kimball Elementary School (for third grade through fifth grade).  R. at 16.  Because Kimball only goes up to the fifth grade, D.B. aged out of Kimball, and was placed at Kelly Miller Middle School—his neighborhood school—for the 2006-2007 SY.  R. at 18; T. at 48, 58.  The due process hearing occurred during the summer before the 2006-2007 SY (R. at 15), and the Plaintiff sought a private school placement at Rock Creek Academy, a private school with a full-time, special education program for that year.  R. at 20.

After the subject HOD, in October of 2006, the Plaintiff withdrew her son from Kelly Miller, and enrolled him at Marshall Educational Center, a school within the DCPS system (Def. Ex. 1), and on January 30, 2007, DCPS issued a prior notice of placement at Marshall.  Def. Ex. 2.  Absent a placement by this Court at Rock Creek Academy, the student will continue to attend Marshall during the 2007-2008 SY.

Should this Court decide to place the student at Rock Creek Academy despite the hearing officer's conclusion that it was not an appropriate placement,[2] it must first consider the student's current educational situation.  Because a year has passed, his educational needs may have changed.  Additionally, the appropriateness of the Marshall placement was never before the hearing officer, so this Court would be in the position of first review.  As such, before the Court places the student in Rock Creek Academy, it must either remand for findings about the student's current educational situation or hold its own hearing for that limited purpose.  As IDEIA hearing officers have specialized background and skills in education and this Court does not, a remand would be the best course.

### A.     The hearing officer properly found that Kimball had been an appropriate placement for D.B.

Based on the record, the hearing officer found that the Kimball placement had been appropriate for D.B.  R. at 21.  Significantly, just one and a half years prior to the hearing, another hearing officer had found Kimball to be an appropriate placement (and also found his then-current IEP to be appropriate).  *Id.*  The hearing officer concluded that there was " … no evidence presented from which [he] could conclude that the finding and conclusions already made regarding the student's placement at Kimball were no longer valid."  R. at 21.  The hearing officer also specifically found that "[w]hile the student attended Kimball his IEPs were implemented and the student made progress," as to which Ms. Robin Rabb, the DCPS Special Education Coordinator of Kimball, testified.

---

[2] This issue will be briefed in detail below.

R. at 17.[3]  Therefore, the record supports the hearing officer's conclusion that Kimball

was an appropriate placement for D.B.

> **B.    The hearing officer properly held that the Plaintiff did not
> adequately plead in her administrative complaint that the
> proposed KellyMiller Middle School placement was not appropriate.**

The Plaintiff alleged in her Motion that the hearing officer should have considered

whether the Kelly Miller placement was appropriate.  The hearing officer, however, held

that the Plaintiff had not sufficiently pleaded the inappropriateness of Kelly Miller,

making no mention of the Kelly Miller placement in the violations section of the

Complaint.  R. at 3, 19 Fn. 8.  As such, the hearing officer did not hear evidence

regarding this issue, although DCPS had a witness available at the hearing to discuss the

appropriateness of Kelly Miller.  R. at 33; T. at 13.  Also, the Plaintiff did not attempt to

present any evidence that Kelly Miller was inappropriate.  *See* Record, generally.[4]

DCPS placed D.B. at Kelly Miller for the 2006-2007 SY because the student had

aged out of Kimball, and because Kelly Miller was his neighborhood school.  As

mentioned above, the student only briefly attended Kelly Miller, and attended Marshall

for almost all of the 2006-2007 SY.  Def. Ex. 1-2.  Should this Court determine that the

---

[3] This finding is not inconsistent with the hearing officer's conclusion that the student's 2005 and 2006 IEPs were not appropriate because the team did not explain in the IEPs (or in notes elsewhere) its decision to change disability classifications and services.  R. at 20-21.  Just because the IEPs might be insufficient in one aspect does not mean they are completely improper.  Moreover, whether D.B.'s classification was Emotionally Disturbed ("ED") [2003 IEP, R. at 54; 2004 IEP, R. at 71], Multiple Disabilities ("MD") as Learning Disabled ("LD") and Other Health Impaired ("OHI") [2005 IEP, R. at 111, 120], or just LD [2006 IEP, R. at 121], Kimball was able to implement his IEPs and provide him with special education and related services.  R. at 17.

[4] The Plaintiff did testify that no one at the May 9, 2006, IEP meeting discussed the Kelly Miller placement with her, although she was told at the meeting that the student's placement for the 2006-2007 SY would be Kelly Miller.  R. at 18.  Ms. Rabb, however, testified that, at the meeting, the team "did discuss the placement of Kelly Miller," that she gave the Plaintiff information about the Special Education Coordinator at Kelly Miller, and that she "gave her some options to some alternative schools she may want to place [D.B.] at.  T. at 58-59.

hearing officer should have considered whether Kelly Miller was appropriate, it should

remand this issue to a hearing officer, but direct an inquiry about Marshall instead.

### C.    The hearing officer properly found that the record does not support a placement at Rock Creek Academy.

As the District argued in its Motion for Summary Judgment, the Plaintiff failed to

allege *any* facts in her Complaint challenging the HOD with regard to the appropriateness

of Rock Creek Academy and, therefore she waived that issue on appeal.  Def. M. at 13.

Not once did she allege even generally in her Complaint that the hearing officer erred in

his conclusion that the record did not support a placement at Rock Creek Academy.

Without such a challenge, the hearing officer's findings and conclusions on that issue

remain and cannot be raised in this action.  As such, this Court cannot here address the

appropriateness of Rock Creek Academy, or make a placement there.

Assuming this Court nonetheless allows the Plaintiff to challenge the hearing

officer's conclusions about Rock Creek Academy despite no allegations in the

Complaint, this portion of the HOD should be upheld because it is soundly based on the

record.  In the HOD, the Hearing Officer specifically found that the record—including

D.B.'s most recent IEP at the time of the hearing and the testimony of Executive Director

of Student Services Keren Plowden of Rock Creek Academy—did not support a

placement at Rock Creek Academy.  R. at 3, 18, 22.  For example, D.B.'s last IEP did not

classify him as Emotionally Disturbed ("ED") and did not require a full-time special

education program.  R. at 22.  Ms. Plowden testified that D.B. would be assigned to full-

time special education classroom with four other students who are classified as ED.  R. at

18.  As such, the classroom would be more restrictive than necessary, and he would not

be with similarly classified children.

In fact, none of D.B.'s IEPs have ever called for a full-time, special education program. R. at 54, 71, 111, 121. As partially cited in the Plaintiff's Motion (Pl. M. at 35), the IDEIA articulates a preference for the inclusion of disabled children in general education classrooms whenever possible:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5). In the present case, there is nothing in the record to suggest that D.B. requires exclusion from non-disabled students. The hearing officer specifically found that "there was no testimony or evidence to contradict Ms. Rabb's testimony the student made progress while attending Kimball." R. at 21. This finding indicates that the student benefited educationally during his time at Kimball.

The hearing officer also held that

> It is not clear, even with the testimony of Ms. Plowden that the student's placement in a full time special education program with ED students would be of educational benefit rather than detrimental to the student. Therefore, the Hearing Officer orders in addition to the evaluations that were agreed [upon by] the parties an immediate student evaluation plan meeting to determine the evaluations necessary to accurately determine the student's disability classification.

R. at 22. Simply put, the hearing officer was concerned that a placement at Rock Creek Academy might be *harmful* to the student's educational progress, and soundly decided not to award that requested relief.

**II.    The hearing officer sufficiently addressed the procedural issues raised by the Plaintiff, and this Court should defer to those judgments.**

As indicated above, the Plaintiff received all of the relief she requested except for attorneys' fees and a private school placement.  As such, it is unclear why the Plaintiff revisited the procedural issues that came up before and during the hearing.  The hearing officer properly addressed each of the procedural issues raised by the Plaintiff, and although the hearing officer decided not to end the proceedings based on procedural matters, he ultimately found that DCPS did not sustain its burden for providing D.B. with an appropriate IEP or for providing specialized education and specialized services after December of 2004.  R. at 20-21.

**A.    The hearing officer correctly denied the Plaintiff's motion for default judgment against DCPS for failure to respond to the administrative complaint.**

For almost 10 pages of her Motion, the Plaintiff wrongly contends that DCPS did not respond to the administrative complaint, and that the hearing officer therefore should have awarded the Plaintiff a default judgment.  First, as the record itself demonstrates, and the Plaintiff concedes (Pl. M. at 3), DCPS *did* file a response to the administrative complaint.  R. at 185, Pl. M. Ex. 1, 1-2.[5]  In its response, DCPS specifically denied the allegations in the administrative complaint.

As noted by the Plaintiff, the IDEIA requires that:

> [i]f the local educational agency [in this case DCPS] has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response …

---

[5] The administrative record inadvertently included only page 1 of DCPS' response to the administrative complaint.  As an exhibit to her Motion, the Plaintiff included a complete copy of the response, and the District here amends the record by incorporating that document in full.

20 U.S.C. §1415(c)(1)(B)(i).  Notably, the IDEIA does not mandate a default judgment for failure to respond.

Given that DCPS *had* issued prior notices, as the Plaintiff again concedes (Pl. M., at 12), DCPS complied with the IDEIA.  With regard to placement, DCPS issued a notice of placement at Kimball in 2003 (R. at 64), 2004 (R. at 82) and 2005 (R. at 120), and in 2006, DCPS issued a notice of placement at Kelly Miller (R. at 131).  With regard to services and classifications, DCPS also completed and reviewed the student's IEPs in 2003 (R. at 54), 2004 (R. at 71), 2005 (R. at 111) and 2006.  R. at 121.  Therefore, there was no need for DCPS to respond in detail to the administrative complaint, as the Plaintiff (who is the student's parent) already had written notice of DCPS' position. Significantly, the Plaintiff attended all of the IEP meetings convened at Kimball.  R. at 54, 71, 111, 121.[6]

While it is true that the prior notices of placement were brief, it is important to note the context of those notices of placements.  At *the request of the Plaintiff*, the student received special permission to attend Kimball (known as an out-of-boundary transfer enrollment), rather than his neighborhood school, Benning Elementary School. T. at 45, 57.  And as long as Kimball could implement the student's IEP, the transfer was renewed annually.  T. at 61-62.  Under usual circumstances, a prior notice of placement to the same school would not be issued annually (because there is no change to the placement), but because of the student's special status at Kimball, the placement was revisited each year.  Also, when the student completed fifth grade, he aged out of

---

[6] The first page of each IEP includes a section with a list of the participants, and Ms. Sykes' name and signature is on all four IEPs.

Kimball, and his neighborhood middle school was Kelly Miller Middle School. T. at 58. Thus, the prior notice to that school was issued primarily on that basis. *Id.*

In support of her position that DCPS' response to her administrative complaint was insufficient, the Plaintiff relies heavily on this Court's decision in *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 71-73 (D.D.C. 2005) (holding that DCPS failed to respond sufficiently to the complaint in writing). But this reliance is misplaced. The present case can be distinguished from *Massey* because here DCPS timely issued relevant prior written notices (regarding placement, as well as IEPs) *before* the Plaintiff filed her lawsuit, and in the presence of, and with the participation of, the Plaintiff. In the *Massey* case, DCPS failed to act on behalf of the student prior to the lawsuit, but in the present case, DCPS held timely, annual IEP meetings.

The hearing officer correctly denied the Plaintiff's motion for a default judgment. In doing so, the hearing officer cited *Lesesne v. District of Columbia*, which held that, even if "DCPS violated its procedural obligations, the [IDEIA] claim is viable only if those procedural violations affected the student's *substantive* rights." 447 F.3d 828, 834 (D.C. Cir. 2006). Even assuming that the response was somehow deficient, the Plaintiff has made no showing that the student's substantive rights were violated by DCPS' response to the administrative complaint. And courts and hearing officers alike have an interest and preference for deciding cases on the merits where possible.[7] Because DCPS *did* file a sufficient response to the administrative complaint, the hearing officer properly denied the Plaintiff's Motion for Default Judgment.

---

[7] In her Motion, the Plaintiff argued that the new burden of proof in IDEIA cases gives an unfair advantage to the school system. Pl. M. at 22. As the new rules were not in effect at the time of the subject administrative proceeding, and DCPS in fact carried the burden, this argument is irrelevant. R. at 20, Fn. 10. As such, the District briefly replies only by pointing out that it is not unusual, or unfair, for the party bringing a lawsuit to bear the burden of proof.

Even assuming the response was not sufficient, DCPS clearly denied the claims against it, and made enough of a response to survive a default judgment. In such a situation, the proper recourse is either to allow the proceedings to continue, as the hearing officer did in the present case, or to order DCPS to provide a more detailed response—not a default judgment.[8]

   **B.    The hearing officer correctly determined not to give
           favorable inferences to the Plaintiff where DCPS failed to
           produce student records from the outset. Instead,
           the hearing officer considered to all of the evidence before him
           <u>and weighed the effect of not receiving those documents.</u>**

The Plaintiff alleges that the hearing officer should have given the Plaintiff favorable inferences because DCPS did not produce the student's records. Pl. M. at 22-24. In doing so, the Plaintiff ignores the fact that the hearing officer ultimately did give her the benefit of the doubt with regard to missing documents in his decision. The hearing officer specifically held that DCPS failed to meet its burden regarding the delivery of services from December of 2004 through the end of SY 2005-2006 because of lack of documentation and despite testimony from Ms. Rabb about implementation. R. at 21. The hearing officer concluded:

> Although [DCPS Special Education Coordinator Robin Rabb] testified that she knew of no lapse in services for the student during the SY 2004-2005 or SY 2005-2006, *the encounter tracking forms were not made available to verify the services.* On the other hand, the parent testified the student had not been provided all his counseling services during that period. The Hearing Officer concludes the testimony of each witness on this issue is neutralized and

---

[8] In her Motion, the Plaintiff suggested that the proper relief for no response would be a default judgment because the IDEIA is silent on this issue, and because court rules require default judgments in the similar context of a court action. Pl. M. at 15-19; *see* D.C. SCR-Civ. 55; Fed. R. Civ. P. 55. As DCPS did respond sufficiently, the Defendant will not here address whether this Court should "borrow" from the Court Rules in situations where DCPS has not responded.

*without the tracking forms to indicate what services were
provided DCPS has not met its burden of proof.*

R. at 21 (emphasis added).  Clearly, the Plaintiff benefited from DCPS' lack of

documentation.

The hearing officer additionally found that the Plaintiff did request the student's

educational records, but that there was no indication that DCPS responded, "although

some of the student's records were contained in the Parent's counsel's disclosures."  R. at

18.  Given that most of the 27 exhibits from the Parent's counsel's disclosure letter are

from the student's educational records, DCPS' failure to respond to the Plaintiff's record

request had a minimal effect on the student's rights.  *See Lesesne, supra,* 447 F.3d at 834.

Notably, Ms. Rabb of Kimball was not able to respond to the student's request for his

documents because his records had already been transferred to Kelly Miller, and were not

available to her.  R. at 18.

### C.    The hearing officer did not err when he allowed the testimony of the DCPS Special Education Coordinator at Kimball.

The Plaintiff wrongly claims that the hearing officer should not have allowed the

testimony of Ms. Rabb, the DCPS Special Education Coordinator of Kimball because

certain documents, not her testimony, were best evidence, and because of the hearsay

rule.  Pl. M. at 24-26.  Although the Plaintiff makes much about the Confrontations

Clause of the Constitution in her Motion, the due process hearing is not a criminal matter,

and the Rules of Evidence are not strictly applied to due process hearings held pursuant

to the IDEIA.

Importantly, DCPS presented Ms. Rabb as a fact witness, and established the

basis of Ms. Rabb's testimony regarding the student's instruction and progress at Kimball

as a fact witness, despite the Plaintiff's claim to the contrary.  Pl. M. at 26.  As the Special Education Coordinator, Ms. Rabb testified that she is "responsible for maintaining [Kimball's] student records, scheduling and insuring that IEP meetings are completed, [and] insuring that all students are receiving their services … [and she is] responsible for monitoring and updating [the ENCORE database] system as well as collaborating with [Kimball's] student support team"  T. at 44-45.  As a teacher, and later as a Special Education Coordinator, she had participated in hundreds of IEP meetings.  T. at 62-63.

Ms. Rabb also had personal and specific knowledge D.B.  Ms. Rabb testified that she had "either written or at least been a part of every IEP meeting that has occurred here at Kimball since [the student] has been here."  T. at 45.  She also testified that, as the Special Education Coordinator, any lapse in service delivery to D.B. would have been brought to her attention.  T. at 54.

Ms. Rabb was an appropriate witness for DCPS, and the hearing officer did not err in allowing her testimony.  Not only did she have extensive knowledge of the special education program at Kimball generally, but she also oversaw D.B.'s special education program since his enrollment at Kimball.  DCPS timely identified her as a witness (R. at 33), and the parent's counsel was given an ample opportunity to confront and cross-examine Ms. Rabb.  Moreover, the sort of testimony Ms. Rabb provided as the Special Education Coordinator is commonly presented by DCPS in IDEIA due process hearings, and allowed by hearing officers.  As such, this Court should not override the hearing officer's decision to allow her testimony.

## <u>CONCLUSION</u>

Despite the Plaintiff's contention that DCPS has committed "egregious" procedural violations (Pl. M. at 2), the record indicates the opposite. DCPS convened annual IEP meetings to discuss the student's needs. The parent participated in each of those meetings, and brought advocates to all of those meeting except one. Another hearing officer found that Kimball was appropriate, and the Special Education Coordinator testified that the student made progress while at Kimball—a fact which the Plaintiff did not challenge at the hearing.

Clearly, this is not a case in which DCPS did nothing for the student. Furthermore, the due process hearing was fair to both sides. The hearing officer considered the testimony of three witnesses and 27 exhibits, and based his decision on the record before him. His decision was consistent with both the letter and spirit of the IDEIA. As such, this Court need not intervene and substitute its judgment for that of the hearing officer, especially for the sole purpose of awarding the Plaintiff the only thing she did not receive as relief—a private school placement.

For the above reasons, the Defendant respectfully requests that this Court deny the Plaintiff's Motion for Summary Judgment, and grant the District's Cross-Motion for Summary Judgment.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

July 31, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| EVELYN SYKES, | ) | |
| Guardian and Next Friend of D.B., a Minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0255 (RCL) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| A municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S RESPONSE TO**
**THE PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

The Defendant, by counsel, here responds to the Plaintiff's Statement of Material

Facts. The Defendant notes that the parties agree that this case may be disposed of by

summary judgment motions. Thus, while the Defendant does not claim that the facts

contained in the Plaintiff's Statement create a genuine issue requiring trial, the facts set

forth in the Defendant's Statement of Material Facts directly conflict with the Plaintiff's

facts in that they require a grant of summary judgment for the Defendant. Also, the

Defendant questions the materiality of some of the Plaintiff's fact statements, as well as

the accuracy of some of those statements. The Court should assess the weight ascribed to

these fact statements and their materiality to the issues presented in this case accordingly.

The Defendant responds as follows (paragraph numbers below correspond to the

paragraph numbers in the Plaintiff's Statement):

1.       The Defendant does not dispute the statement in paragraph 1, except that

Emotionally Disturbed ("ED") is a classification, not a diagnosis. Further,

although the student had been classified as ED in his 2003 and 2004 IEPs

(R. at 54, 71), his 2005 and 2006 IEPs did not classify him as ED.  R. at

111, 120, 121.

4.    The Defendant does not dispute the statement in paragraph 4, but clarifies

that D.B. remained at Kimball until the end of the 2005-2006 SY.  R. at

16, 131.

5.    The Defendant does not dispute the statement in paragraph 5, but directs

this Court to an additional cite.  T. at 48.

7.    The Defendant does not dispute that DCPS placed the student at Kimball

in September of 2003, but the remaining portions of the statement in

paragraph 7 are the Plaintiff's characterizations of a document with which

the Defendant disagrees.  R. at 64.  The Defendant also disputes the

materiality of the entire statement, since a previous HOD already ruled

regarding the appropriateness of the student's placement and IEP from

2003 through December of 2004.  R. at 19, Fn. 8.

8.    The Defendant does not dispute that DCPS continued the student's

placement at Kimball in May of 2004, but the remaining portions of the

statement in paragraph 8 are the Plaintiff's characterizations of a

document with which the Defendant disagrees.  R. at 82.  The Defendant

also disputes the materiality of the entire statement, since a previous HOD

already ruled regarding the appropriateness of the student's placement and

IEP from 2003 through December of 2004.  R. at 19, Fn. 8.

9.    The Defendant does not dispute that DCPS continued the student's placement at Kimball in May of 2005, but the remaining portions of the statement in paragraph 9 are the Plaintiff's characterizations of a document with which the Defendant disagrees. R. at 120.

10.   The Defendant does not dispute that DCPS placed the student at Kelly Miller Middle School in May of 2006, but the remaining portions of the statement in paragraph 10 are the Plaintiff's characterizations of a document with which the Defendant disagrees.  R. at 131.

11.   The Defendant does not dispute that Ms. Sykes testified to the statement in paragraph 11, but adds that Ms. Rabb testified that she did explain the placement to Ms. Sykes.  T. at 58-59.

33.   The Defendant does not dispute the statement in paragraph 33, but notes that the witness was not called because the hearing officer determined that the appropriateness of Kelly Miller was not an issue to be adjudicated.  R. at 3, 19, Fn. 8.

35.   The Defendant does not dispute the statement in paragraph 35, but notes that the Motion for Reconsideration was not filed until September 27, 2006.  R. at 14.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
July 31, 2007                    E-mail: Eden.Miller@dc.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

EVELYN SYKES,                          )
Guardian and Next Friend of D.B., a Minor,  )
                                       )
    Plaintiff,      )
                                       )
    v.              )    Civil Action No. 07-0255 (RCL)
                                       )
DISTRICT OF COLUMBIA,                  )
A municipal corporation,               )
                                       )
    Defendant.      )
_____)

### ORDER

Upon consideration of the Defendant's Motion for Summary Judgment and the

Plaintiff's Cross-Motion for Summary Judgment, the Oppositions and Replies thereto,

and the record herein, it is, on this _____ of _____, 2007, hereby **ORDERED**

that:

1. the Defendant's Motion for Summary Judgment is **GRANTED**; and it is

    further **ORDERED** that

2. the Plaintiff's Motion for Summary Judgment is **DENIED;** and it is further

    **ORDERED** that

3. this case is **DISMISSED WITH PREJUDICE.**

 

                          _____
                          Royce C. Lamberth
                          United States District Judge

# EXHIBIT 1

**District of Columbia Public Schools**
## ANNUAL STUDENT ENROLLMENT FORM
### School Year 2006-2007

SCHOOL NAME: Marshall
STUDENT ID # 9083058

**STUDENT INFORMATION**            (Print all information)

| | | |
|---|---|---|
| 1. Student's Full Legal Name (Last, First, Middle) BROWN, DARON Keith | 2. Date of Birth (Month, Day, Year) 1/26/95 | 3. Country of Birth USA |

4. Address 3930 BlAine St NE. N/A   Apt. No.
5. Telephone Number (202) 388-5524
6. Sex (Circle) (Male) Female

7. City WASH. DC   State   Zip 20019
8. Current Grade (Specify) 6
9. Social Security Number 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

10. School Last Attended (if DCPS, name school only) Kelly Miller
Address 301 49th St NE
City WASH. DC   State   Zip 20019

13. School Attending (if not DCPS) Thurgood Marshall
Address
City   State   Zip

11. Ethnic Designation                              * Not of Hispanic origin
___ American Indian or Alaskan Native
___ Asian or Pacific Islander
X Black*
___ White*
___ Hispanic

12. Language other than English spoken at home

14. Health Insurance Information
Provider: _____   Medicaid 00343394
Policy #: 00702776 77

Medicaid HMO: _____

☐ Advantage
☐ Amerigroup
☐ Chartered
☒ Health Services Children with Special Needs

15. Special Services Child Receives
☒ Special Reading Help
☐ Bilingual or ESL Program
☐ Summer School
☒ Student Receives Special Education Services: Yes X No ___
☐ Student Has Current IEP:   Yes X No ___
☐ Advanced Placement

**PARENT/LEGAL GUARDIAN INFORMATION (One must be the parent or legal guardian with whom student lives.)**

16. Mother or Legal Guardian (Relationship)_____
(Last, First, Middle)
Address (if other than student's )   Apt. No.
City   State   Zip
Employer N/A   Telephone Number ( ) N/A
Employer's Address N/A

17. Father or Legal Guardian (Relationship)_____
(Last, First, Middle)
Address (if other than student's)   Apt. No.
City   State   Zip
Employer   Telephone Number ( )
Employer Address

18. RESIDENCY STATUS:   ☒ D.C. Resident (Student & parent or legal guardian live in D.C.)
☐ Nonresident (Student/or parent live outside D.C.)   ☐ Receipt of payment for nonresident tuition attached

19. Is your current address a temporary living arrangement?   Yes_____   No X

20. Is this temporary living situation due to loss of housing or economic hardship?   Yes_____   No X

**EMERGENCY**

21. Emergency Contact Person: (other than parent) Leon Sykes
Address: 3930 Blaine St NE   WASH, DC 2001
Relationship: Caregiver   Telephone Number: (202) 388-5524

I completed this form and I certify that the information above is accurate. I understand that providing false information for purposes of defrauding the government is punishable by law.

_Carolyn B. M_   Date 10/27/06

* Signature of Parent/Legal Guardian with Whom Student Lives or Adult Student

Revised 5/22/06

EXHIBIT 2

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
**SPECIAL EDUCATION**

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:

- [ ] Initial Evaluation
- [ ] Initial Placement
- [X] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [ ] Annual
  - [X] Other  requested

Date  1/30/2007

Student  Daron  Brown  DOB  1/26/1995

School  Marshall Elementary

Current Disability Category  LD

Setting  Combination general education and resource classroom

Dear  Ms. Sykes

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:

- [X] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)**

- [ ] Your child is not eligible for special education service(s).
- [ ] Your child is eligible or continues to be eligible to receive special education services as a student with _____
- [ ] Your child will begin receiving _____ as a related service(s).
- [X] Your child will no longer receive  Speech-Language  as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
  from _____ to _____
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____

Location of Services  Marshall Elementary

**Description and Explanation of agency action proposed or refused.**

Based on the students performance in speech and language classes and the assessments conducted, he is now functioning on the average level and no longer needs assistance

**Description of Other Options Considered and reasons for rejection of each option**

the psychological report was reviewed.

Other relevant factors to the decision-  n/a

MDT Members:
- [X] Principal or Designee
- [X] Parent
- [ ] Student
- [X] Social Worker
- [X] General Education Teacher
- [X] Special Education Teacher
- [X] Speech and Language
- [X] *LEA & Interpreter  (*may be one)
- [X] Psychologist
- [ ] Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact  Tiffany Batson  at  (202)576-6900  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

1