THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EVELYN SYKES,** ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 07-255 |
| v. ) | RCL |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| Defendant. ) | |

### PLAINTIFFS' MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.   THE PLAINTIFF ADEQUATELY PLED THE INAPPROPRIATENESS OF THE KELLY MILLER PLACEMENT IN HER DUE PROCESS COMPLAINT**

The Defendant never addresses the actual content of the Plaintiff's due process complaint, including the very clear statement that "DCPS' proposed placement at Kelly Miller MS is inappropriate." R. at 191. The Defendant never addresses the fact that DCPS plainly understood the Plaintiff to have been making a claim about the Kelly Miller placement. See Pl.'s Mot. at 28; R. at 33; Hr'g Tr. 13. The Defendant never addresses the fact that the Hearing Officer, without any comment (or any objection by DCPS counsel) heard testimony regarding the appropriateness of Rock Creek Academy as a placement for D.B., a placement which could only be ordered if the Kelly Miller placement were successfully challenged.

The Defendant does state, in its Response to the Plaintiff's Statement of Material Facts, that the DCPS witness from Kelly Miller "was not called because the hearing officer determined that the appropriateness of Kelly Miller was not an issue to be adjudicated, but that statement is not remotely true. Def's Response to Plaintiff's Statement at 3, #33. The Hearing Officer made no such ruling until he issued the HOD; neither DCPS nor the Hearing Officer even raised the

question at the hearing. At the hearing, DCPS stated its reason for declining to call its Kelly Miller witness, and it had nothing to do with the Plaintiff's pleading:

> I can call the Special Education Coordinator at Kelly Miller where the student is being proposed placed for the '06-'07 school year, but even without conceding [that] Kelly Miller is inappropriate[, a] placement cannot be rendered. It is DCPS['] position that a placement – what placement option if DCPS cannot present Kelly Miller being appropriate based upon this IEP, could the hearing officer award other than returning to a MDT meeting[?]

Hr'g Tr. 13.

Without proposing any specific legal significance, to this fact, the Defendant points out that the Plaintiff presented no case regarding Kelly Miller at the hearing. See Def.'s Opp. at 5. That criticism falls flat for at least two reasons: 1) with the burden of proof on DCPS, there was no reason for the Plaintiff to present any evidence on that issue after DCPS specifically declined to do so; and 2) DCPS' refusal to present information regarding Kelly Miller at the meeting at which they placed D.B. there, and their failure to produce records generally, made it virtually impossible to present any case. See Pl.s Mot. at 10-14, 22-24, 27. DCPS' refusal to allow the Plaintiff informed participation in the placement decision, as the IDEA requires, was one of the main causes of the Plaintiff's due process complaint.

Regardless, DCPS actually made the Plaintiff's case for her by openly admitting, as the Defendant does now, that DCPS placed D.B. at Kelly Miller solely "because [he] had aged out of Kimball, and because Kelly Miller was his neighborhood school." Def.'s Opp. at 5; see Hr'g Tr. 58 (Ms. Rabb's testimony that "the rationale and basis for issuing the notice of placement to Kelly Miller" was "[t]hat is [his] neighborhood school"). That is, apparently there was no consideration of D.B.'s evaluations, records, disabilities, or needs.

## II.  PLACEMENT AT ROCK CREEK ACADEMY IS APPROPRIATE RELIEF

The Defendant's argument that the Plaintiff waived ("on appeal") her request for placement at Rock Creek Academy as relief lacks any case support whatsoever, and borders on the frivolous, particularly in light of the fact that the Defendant devoted the bulk of its own argument for summary judgment to the question of Rock Creek Academy. See Def.'s Mot at 11-13. The Plaintiff outlined the many flaws in this argument in her Opposition. See Pl.'s Opp. at 3-5.

The Defendant defends the Hearing Officer's rejection of Rock Creek Academy because "D.B.'s last IEP did not classify him as Emotionally Disturbed ('ED') and did not require a full-time special education program." Def.'s Opp. at 6. Again, the Defendant disregards the fact that the Hearing Officer simultaneously found that same IEP to be inappropriate, specifically because the removal of the ED classification from the IEP was suspect. R. at 20.

The Hearing Officer rejected Rock Creek Academy because "[t]here [were] no current evaluations from which the Hearing Officer [could] discern the appropriate placement for the student." R. at 22. There is no question that, due entirely to DCPS' illegal actions, D.B.'s evaluations were not current, his IEPs were inappropriate, and there were almost no school records available to the Hearing Officer. The question, then, is why the Hearing Officer would deny the Plaintiff her requested relief due to DCPS' illegal restriction of information.

By the Defendant's reasoning, DCPS could forever prevent private placement simply by failing to update evaluations and to develop valid IEPs, because hearing officers could never then determine with absolute certainty what the child needed.

The Plaintiff presented sufficient evidence that Rock Creek Academy could educate D.B. in a therapeutic environment. DCPS presented nothing to the contrary, and the Defendant has not

presented anything new. If there was any question on this issue, the Hearing Officer should have resolved in favor of the parent and child, both because DCPS bore the burden of proof and because they had restricted necessary information.

The Defendant argues that, because time has passed and D.B. is not at Kelly Miller, this Court may only remand. Def.'s Opp. at 3-4.

As a preliminary point, it should be noted that the Defendant's representation that DCPS placed D.B. at Marshall on January 30, 2007 is simply false, as is plain from the Defendant's own exhibit. The "Prior to Action Notice" attached to the Defendant's Opposition regards the discontinuation of speech/language services, and nothing more. See Def.'s Opp., Ex. 2 ("change in placement" box not checked on to right of form; only decision identified is "Your child will no longer receive Speech-Language as a related service(s).").

Moreover, as is the case with almost every DCPS prior notice, the prior notice does not contain all of the information required by the IDEA regardless. Compare 20 U.S.C. § 1415(c)(1); Def.'s Opp., Ex. 2. DCPS has fulfilled the IDEA's notice requirements regarding D.B.'s placement at Marshall.

Regardless, if DCPS did want to defend itself on the basis of a placement to Marshall, then it should have placed him there in the first instance, instead of placing him at Kelly Miller solely, as the Defendant openly admits, because DCPS personnel believed it to be his home school. Instead, the Defendant seeks to keep DCPS a moving target in IDEA actions, shifting its placement as it comes under fire.

It is the very rare IDEA case that is resolved in less than six months. It is always theoretically possible that the child's needs and circumstances have changed in that time.

By the Defendant's argument, the District Court would never be able to order placement, and every parent would be caught in an endless cycle of remands. If the Defendant had some evidence that Rock Creek Academy is no longer appropriate for D.B. due to some change in his needs, then it could have offered it to the Court.

It would be particularly unjust to delay D.B.'s relief, as the Defendant states the Court must do, on the basis of the Plaintiff's transfer of him to Marshall, in an attempt to mitigate the harm done him by DCPS as best she could. After DCPS ignored all IDEA procedure and off-handedly dumped D.B. in his local school, the Plaintiff's only choices were to send him to Kelly Miller, send him to another DCPS school like Marshall, or keep him out of school. The Plaintiff did not have the financial resources to pay Rock Creek's tuition. If the Plaintiff had that money, the Defendant could not make this argument, so the Defendant is asking the Court to penalize the Plaintiff for lacking the resources to pay private school tuition, and for mitigating the damages to D.B. in the very limited way she could.

### III. THE HEARING OFFICER ERRED IN FINDING KIMBALL TO HAVE BEEN AN APPROPRIATE PLACEMENT

As in its Motion for Summary Judgment, the Defendant offers no support for the Hearing Officers decision, and instead just reviews what he stated. The Defendant does state, as did the Hearing Officer, that Kimball was an appropriate placement for D.B. because "Kimball was able to implement his IEPs," though even the Hearing Officer had found the IEPs to be inappropriate, for reasons as fundamental as incorrect disability classifications. Def.'s Opp. at 5, footnotes 3. Nothing really needs be said to further illuminate the inherent contradiction of finding a placement appropriate because it could implement a plan that was inappropriate.

## IV. THE HEARING OFFICER FULLY PARTICIPATED IN THE DENIAL OF DUE PROCESS TO THE PLAINTIFF

The Defendant states, without any support, that "this Court should defer" to the Hearing Officer's rulings on hearing procedural. As addressed in the Plaintiff's Opposition at 6-8, the Defendant overstates the requirement of "due weight" in general, but regardless, the Hearing Officer is due absolutely no deference in decisions of law. See, e.g., Reid ex rel. Reid v. District of Columbia, 401 F. 3d 516, 521 (D.C. Cir. 2005).

### A. The Hearing Officer Should Have Granted a Default for the Failure to Serve a Valid Response

1. DCPS did not serve a valid, required response.[1]

Throughout its argument in support of the denial of a default, the Defendant appears to take the position that DCPS can meet its IDEA obligations simply by titling a document "response" or "prior notice" and serving it. The Defendant makes no attempt defend the content of the Response and the prior notices, despite the fact that the Plaintiff devoted four pages of her Motion to otuling their insufficiency. Pl.'s Mot. at 11-14.

Though it should not have been necessary to point out the language of the statute to DCPS, this Court did so in Massey v. District of Columbia, 400 F. Supp. 2d 66, 71-72 (D.D.C. 2005), as discussed in the Plaintiff's Motion at 10-14. In Massey, Judge Lamberth went to

---

[1] The Defendant states that "[f]or almost 10 pages of her Motion, the Plaintiff wrongly contends that DCPS did not respond to the administrative complaint." The Defendant does not identify the ten pages in question. The Plaintiff attached DCPS' Response as an exhibit to her Motion. Pl.'s Mot, Ex. 1. In the Background section of the Plaintiff's Motion, the Plaintiff discusses DCPS Response at length. Pl.'s Mot. at 3-4. The Plaintiff's argument regarding the insufficiency of DCPS' Response begins on page 10 of the her Memorandum. The title of that argument point refers to "DCPS' failure to serve an adequate response." Pl.'s Mot. at 10 The first line of that argument states, "DCPS' Response to the Plaintiff's due process complaint clearly fails to meet the explicit requirements of the IDEA." Pl.'s Mot. at 10 The relevant sub-heading to that argument is, "DCPS' Response Did Not Meet the Requirements of 20 U.S.C. § 1415(c)(2)(B)(i)(I)." Pl.'s Mot. at 13. The first line of that section states that "DCPS served a document intended as a response." Pl.'s Mot. at 13.

lengths to make clear the court's position that the notice requirements of 20 U.S.C. §1415 were to be taken literally, that "the IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever form it deems appropriate," and that Congress did not "intend[] an exemption for 'close enough.'" Id.

The Defendant seeks to bypass Massey with the claim that DCPS "timely issued relevant prior written notices," but again, the Defendant does not – and cannot – defend the content of those notices as compared to the statutory requirements. In fact, in its Response DCPS flatly admitted that "DCPS did not issue a prior to action notice in this case." Pl.'s Mot., Ex 1. If there is no "close enough" for a response, there is none for a prior notice.

Regardless, as noted in the Plaintiff's Motion, the prior notices did not address all of the Plaintiff's claims, notably her claim that D.B. had not received specialized instruction and related services while at Kimball. R. at 64, 82, 120, 131, 133-137.

It is worth noting that in Massey, the "response" that the court found to be completely inadequate was in fact a form "prior notice" of exactly the kind issued in the case at bar, with the same deficiencies. 400 F. Supp. 2d at 69, 71-72. While it is true that Judge Lamberth criticized that document as a response – the purpose for which it was offered – and not as a prior notice, a prior written notice must contain all of the same information required in a response (and more), so the Massey analysis applies equally well to DCPS' use of its meager prior notice form as a prior notice. Compare 20 U.S.C § 1415(c)(1); 20 U.S.C. § 1415(c)(2)(B)(i)(I).

> 2.  No showing of the violation of substantive rights is necessary for a default judgment, and those rights were violated regardless.

The Defendant argues that a default was inappropriate because there was no violation of D.B.'s substantive rights. In taking that position, the Defendant ignores the offense done to the

Plaintiff's due process rights, and implicitly asks the Court to endorse DCPS' categorical refusal to respond to due process complaints as required by the IDEA.

The IDEA explicitly states that a hearing officer may rule on the basis of a procedural violation if that violation: "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

Each of the first two bases is clearly present in this case. By failing to provide the Plaintiff, the parent, with the information to which she was entitled prior to the hearing, DCPS both: 1) "impeded [R.H.'s] right to a [FAPE]" by interfering with the Plaintiff's presentation of her case; and 2) significantly impeded [her] opportunity to participate in the decisionmaking process," in this case at the hearing.

A parent involved in an IDEA case must rely on the statute's procedural protections, including the response requirement, as the only route to access to certain information necessary to make a case. See Schaffer v. Weast, 546 U.S. 49, 60-61 (2005) (placing burden of proof in IDEA hearings on petitioning parent because the IDEA provides routes for access to information that is in the control of the school system). When DCPS violates the due process protections and withholds that information, the parent may often find it impossible to establish anything at all regarding the student's educational condition (as was so in the case at bar), much less the specific substantive harm done him by the violation. In the absence of a default or similar relief, DCPS would thereby insulate itself in an invulnerable legal tautology made of its own procedural violations.

Even where the parent does have sufficient evidence in his or her control, it is completely nonsensical to require a party to show substantive harm – as opposed to prejudice – resulting from a procedural protection related to the hearing process, because such a violation will rarely have a direct impact. In this way, DCPS' failure to serve a response (or an response in compliance with the law) is no different than, for example, DCPS' failure to appear at the hearing, a far less common occurrence. No one would argue that the failure to appear at the hearing somehow causes a direct harm to the student. But regardless, no one would argue (one hopes) that DCPS could not be defaulted for failing to appear at the hearing.

In that hypothetical situation, the issue is not that the failure to appear at the hearing has directly harmed the student; the issue is that, by failing to appear at the hearing, DCPS has made a decision on substantive grounds impossible, and has thereby forfeited its right to argue that the original violations in the complaint did not harm the student. Similarly, by failing to serve a response in compliance with the IDEA's requirements, DCPS makes a fair decision on the merits impossible, and thereby forfeits its right to argue against the original allegations.

For these reasons, the procedures regarding the hearing process itself have a distinct character, and the cases requiring a showing of substantive harm are inapplicable. DCPS' failure, for example, to perform an evaluation for a few weeks after the deadline has no relationship to a procedural violation that inhibits the complaint and hearing process.

This is not to say that the question of prejudice, as opposed to substantive harm, is not a valid consideration. There are cases in which DCPS serves a response that does not remotely comply with the IDEA, but because of the nature of the complaint, adherence to the strict provisions would be pointless. For example, where a complaint alleges the failure to perform an evaluation, and there is no dispute that the evaluation was necessary, DCPS might respond

simply by stating that it has performed the evaluation, or perhaps that the parent obstructed the process. In such cases, the questions of what records DCPS considered when it acted or failed to act, what other options it considered, etc., are simply inapplicable, and the parent is not prejudiced by the failure to produce that information. In such a case, a default would clearly be inappropriate.[2]

In this case, there is no question that the Plaintiff was severely prejudiced by DCPS' failure to serve a full and valid response, along with many other violations. DCPS' refusal to comply with the IDEA's prior notice and response requirements, as well as its disclosure rules, left the Plaintiff with virtually no information with which to verify or contradict the testimony of DCPS' one witness, upon which the Hearing Officer based all of his adverse findings. And as the Hearing Officer himself stated, DCPS' procedural violations left the Hearing Officer with insufficient evidence upon which to base the fundamental determinations regarding the appropriateness of Kimball and of Rock Creek Academy.

**B.     The Hearing Officer Should Have Made Inferences in the Plaintiff's Favor**

DCPS argues that the Hearing Officer, rather than granting the Plaintiff inferences for DCPS' illegal failure to provide records, "correctly…considered to all [sic] of the evidence before him and weighed the effect of not receiving those documents." Def.'s Opp. at 11. To the contrary, there is no evidence in the HOD that the Hearing Officer ever considered the total inability to determine, through reports cards, standardized test scores, teacher reports, disciplinary reports, "IEP report cards," progress reports, and the documented observations prescribed in his IEPs, whether D.B. had received any instruction at all at Kimball, the quality of that instruction, or D.B.'s progress or decline as a result. D.B. might have spent all day every day

---

[2] This is not to say, though, that default would not be appropriate for the failure to file any response at all, or timely to file it, as such failures will almost certainly prejudice the parent's ability to prepare his or her case.

watching TV in the teacher's lounge at Kimball and declined several grade levels as a result, as far as anyone could tell from the documents produced by DCPS.

The Defendant makes much of the fact that the Hearing Officer did rule for the Plaintiff regarding the provision of related services, but he did so only because the Plaintiff could testify that D.B. had not received all of his counseling. (See R. at 21.) He ruled against the Plaintiff regarding the provision of specialized instruction because she could not testify about something as detailed as whether his instructors had worked on his goals and objectives. See id. The Plaintiff also could say nothing of how he had performed, so the Hearing Officer ruled that Kimball had been an appropriate placement. See id. In all, the Hearing Officer clearly endorsed DCPS' approach of restricting all information and then marching in a school administrator deliver comprehensive hearsay to make DCPS' entire case.

### C. The Hearing Officer Erred in Allowing Hearsay

It is worth noting that the Defendant does not deny that Ms. Rabb's testimony was hearsay. The Defendant also makes no argument regarding the violation of the Plaintiff's right to bar undisclosed evidence. The Defendant's only defense of the hearsay is the completely unsubstantiated claim that "the sort of testimony Ms. Rabb provided as the Special Education Coordinator is commonly presented by DCPS in IDEIA due process hearing, and allowed by hearing officers." Def.'s Opp. at 13.

Unlike Defendant's counsel, who, on information and belief, has never participated in an IDEA hearing, Plaintiff's counsel participates in 15-25 IDEA hearings each month in the District of Columbia, and is therefore very familiar with DCPS common practices and the hearing officers' positions on these issues.[3] It is absolutely true that on a regular basis DCPS offers, as its

---

[3] Because DCPS has made a global, unsubstantiated statement regarding common practice among hearing officers, Plaintiff's counsel is taking some liberties in responding from personal experience.

entire case, the hearsay testimony of a "special education coordinator" like Ms. Rabb.[4] It is absolutely false that it is commonly allowed by hearing officers.

There is a great range in hearing officers' responses in those situation. Some hearing officers have consistent positions either way, of which all of the active IDEA attorneys are aware, and some hearing officers vary their approach depending upon whether the hearsay is about key facts, whether the parent has any way to verify or refute the testimony, whether DCPS could have disclosed documents that would have made the testimony unnecessary, and other, sometimes unclear, factors. Plaintiff's counsel has had a hearing officer stop a witness from testifying simply that a subordinate had made a phone call, and, on the other end of the spectrum, has had a hearing officer allow a single witness to carry a placement case, as Mr. Ruff did here.

Mr. Ruff is consistently among the two to three most liberal hearing officers in his allowance of hearsay. While hearings and HODs like the one in this case are not the norm, they are unfortunately quite common from Mr. Ruff. In fact, Plaintiff's counsel is currently litigating three federal other cases with very similar facts regarding procedural violations, restriction of information, and hearsay, all of which were decided by Mr. Ruff. See 07-CV-63 (RMC); 07-CV-1260 (RBW); 07-CV-1261 (ESH).

Regardless, the Defendant does not make clear the legal significance of its claim that hearing officers commonly allow this kind of hearsay. It is no less a violation of the Plaintiff's rights if it is happening to other parents all the time.

                                            Respectfully submitted,
                                            /s/
                                            Douglas Tyrka, #467500
                                            Tyrka & Associates, LLC

---

[4] In fact, it often seems that the primary duty of a special education coordinator to provide hearsay testimony at hearings.

1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264