UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
EVELYN SYKES,                           )
                                        )
     Plaintiff,                        )
                                        )
v.                                      )   Civil Action No. 07-255 (RCL)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
     Defendant.                        )
_____)

## MEMORANDUM OPINION

This matter comes before the Court on the parties' cross-motions [10 and 11] for summary judgment. Upon consideration of the plaintiff's motion, defendant's motion, the oppositions thereto, the reply briefs, the applicable law, and the entire record herein, the Court concludes that plaintiff's motion will be denied and defendant's motion will be granted as to past school years but denied without prejudice as to year 2007-2008. The Court's reasoning is set forth below. As summary judgment requires that the factual record be construed in the light most favorable to the non-moving party, the factual background recited below is drawn from the defendant's and plaintiff's motions for summary judgment. Also before the court, and dealt with in this Memorandum Order, are various motions related to the summary judgment motions [17] and related to plaintiff's requested status conference [24 and 27].

## STATUTORY BACKGROUND

Passed by the U.S. Congress in 2005, the Individuals with Disabilities Education Act ("IDEA") ensures that, "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20

1

U.S.C. § 1400(d)(1)(A). Local school officials utilize an individualized education program ("IEP") to assess the student's needs and assign them to a commensurate learning environment. 20 U.S.C. § 1414(d)(1)(A). The IEP team, consisting of the student's parents, teachers, and other local education personnel, examines the student's educational history, progress, recent evaluations, and parental concerns prior to implementing a free appropriate public education for the student. Id.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Evelyn Sykes, brought this case on behalf of her grandson, D.B., under the IDEA, 20 U.S.C. § 1400 et seq., to challenge an adverse administrative ruling. D.B. is a twelve-year old resident of the District of Columbia deemed eligible for special education services. In January 2003, a psychiatric evaluation diagnosed D.B. with attention deficit hyperactivity disorder ("ADHD"). Later that year he was designated with a disability classification of emotional disturbance. D.B.'s initial IEP, dated September 17, 2003, required 20 hours of specialized instruction and one hour of psychological counseling per week. The IEP team reviewed D.B.'s plan in May 2004. Based upon the available information, the team reduced the specialized instruction for D.B. to 15 hours per week. In June 2004, an independent evaluation concluded that D.B. should receive occupational therapy services as well.

In November 2004, based upon plaintiff's dissatisfaction with the D.B.'s progress, plaintiff requested a due process hearing to evaluate the IEP. The hearing officer ruled that D.B.'s ongoing placement at Kimball Elementary School was appropriate and he had not been denied a free appropriate public education. He also mandated a review of the IEP in relation to the occupational therapy evaluation and directed compensatory education to be awarded as appropriate. The team awarded D.B. 64 hours of compensatory education services based upon the non-performance of

previously awarded counseling services from the prior year.

In April 2005, a new psychological evaluation diagnosed D.B. with ADHD and depressive disorder but did not recommend a full-time special education placement for D.B. In May 2005, the annual IEP classified D.B. as having multiple disabilities. The team changed D.B.'s weekly prescribed services to 15 hours of specialized instruction, one hour of psychological services and one hour of speech language therapy.

On May 9, 2006, the IEP team convened the annual review of D.B.'s record and re-labeled the student as learning disabled. The team also reduced D.B.'s speech language service to 30 minutes per week. In addition, D.B. aged out of Kimball Elementary and received placement for the next academic year in his local school, Kelly Miller Middle School. Plaintiff opposed this local school choice for D.B. and requested placement at Rock Creek Academy, a private school that offered a full-time special education program. D.B. was accepted at Rock Creek Academy and would have been placed in a class of five students. DCPS declined to fund plaintiff's choice of Rock Creek Academy, finding that no recent IEP supported D.B.'s placement into a full-time program.

In June 2006, plaintiff filed a Due Process Complaint Notice alleging DCPS's (1) failure to provide an appropriate placement since the start of the 2003-2004 school year; (2) failure to conduct and review adequate evaluations in all areas of suspected disability; (3) failure to determine an appropriate disability classification for a qualified child with a disability since the start of the 2003-2004 school year; (4) failure to develop appropriate IEPs since the start of the 2003-2004 school year; (5) failure to provide necessary special education and related services since the start of the 2003-2004 school year; and (6) failure to provide extended school year service following the 2003-2004, 2004-2005, and 2005-2006 school years.

The Due Process Hearing convened on August 23, 2006. The hearing officer accepted into evidence 27 exhibits from the plaintiff and one exhibit from the defendant. In addition, he heard testimony from witnesses: Ms. Evelyn Sykes, Ms. Robin Rabb, Special Education Coordinator of Kimball Elementary School, and Ms. Keren Plowden, Executive Director of Rock Creek Academy,.

The hearing officer found that D.B.'s placement at Kimball was appropriate and therefore limited consideration of the claims to the 2004-2005 and 2005-2006 school years. He subsequently identified three issues for consideration:

Did DCPS deny the student a free appropriate public education by

1. failing to provide the student an appropriate IEP from December 2004?

2. failing to provide the student specialized instruction and related services from
    December 2004 to the end of the 2005-2006 school year?

3. failing to provide the student an appropriate placement for that same period?

The hearing officer's decision, released on September 15, 2006, found that DCPS did not meet its burden with regard to issues one and two and found that more information was needed to answer issue three. Based on this decision, the hearing officer declined to approve D.B.'s transfer to Rock Creek Academy. The hearing officer ordered independent psycho-educational and social history evaluations for D.B. This updated information would be used by a future IEP team to discuss D.B.'s placement and educational program.

In October 2006, plaintiff removed D.B. from Kelly Miller Middle School and placed him into another DCPS system school, Marshall Education Center. On January 30, 2007, DCPS issued a notice of placement to support D.B.'s placement at Marshall. Documentation on March 9, 2007 from the Special Education Coordinator, Ms. Tiffany Batson, claimed that D.B.'s educational

progress continued and that he was a "top performing special education student" at Marshall. In addition, the IEP team notes from June 12, 2007 stated that D.B. was still classified as learning disabled and would continue to receive specialized instruction for 15 hours a week and psychological counseling for one hour a week. Speech and language services were deemed not to be warranted for D.B.

Plaintiff claims that D.B. is not receiving the required number of specialized instruction hours. Furthermore, she contends that Marshall Educational Center is not able to provide the full-time special education program that D.B. requires. For these reasons, plaintiff seeks D.B.'s placement into the full-time program at Rock Creek Academy. Defendant claims that D.B. continues to progress in the integrated program at Marshall Educational Center and that no current documentation supports D.B.'s move to a full-time special education program.

## DISCUSSION

Upon reviewing the parties' arguments and all of the evidence in the record, the Court finds that plaintiff has failed to prove her claims against defendant. Accordingly, this Court will grant summary judgment in favor of the defendants as to past years on all of plaintiff's claims on the basis of the disputed procedural errors. In addition, the Court concludes that the plaintiff's claims in regard to necessary instruction and services were properly and correctly decided by the hearing officer. The issue of current appropriate school placement (for 2007-2008) shall be determined after the administrative evaluation and placement process for D.B. for this year has been completed.

**A.**     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment when the pleadings, affidavits, depositions, answers to interrogatories, and admissions of record demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A disputed issue of material fact is genuine and therefore precludes summary judgment where the Court determines that a reasonable jury could conceivably find in favor of the non-moving party on that factual issue. See Anderson, 477 U.S. at 248.

As a general rule, when adjudicating a motion for summary judgment, the Court must "assume the truth of all statements proffered by the party opposing summary judgment" and construe all evidence in favor of the non-moving party. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999); see Anderson, 477 U.S. at 255; Carter v. Greenspan, 304 F. Supp. 2d 13, 21 (D.D.C. 2004). Indeed, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Washington Post Co. v. United States Dep't of Health & Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

In order to survive a motion for summary judgment, the non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its claims. Anderson, 477 U.S. at 252. To prevail, the non-movant's opposition must contain more than "unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." Carter, 304 F. Supp. 2d at 21;

See FED. R. CIV. P. 56(e); Celotex, 477 U.S. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50. In fact, summary judgment may issue where the movant points to a substantial lack of evidence in the non-movant's case, see Celotex, 477 U.S. at 322, or where the movant demonstrates that the non-movant has failed to proffer "evidence on which the jury could reasonably find for" the non-moving party. Anderson, 477 U.S. at 252.

In addition, the unique nature of IDEA demands a close scrutiny of the proper weight to be attributed to an administrative decision on motions for summary judgment. As stated in Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995), "[j]udicial review in IDEA cases differs substantively from judicial review in other agency actions, in which the courts are generally confined to the administrative record and are held to a highly deferential standard of review." Under § 1415(e), the requirement of the reviewing courts to "receive the records of the administrative proceedings" demands that due weight should be given to the administrative decisions to "prevent the court from imposing its own view of preferable educational methods on the states." Board of Education v. Rowley, 458 U.S. 176 (1982).

**B.    DCPS' failure to serve a response to plaintiff's administrative complaint**

Plaintiff sought default judgment from the hearing officer based upon DCPS' failure to comply with the response requirements. Plaintiff claims that the hearing officer erred by not providing relief for DCPS' faulty response to her administrative complaint. DCPS provided a response to the Due Process Complaint Notice on June 27, 2006. (R. at 139.) This response correctly identifies the student and denies all allegations in both general and specific terms. The submission however, does not satisfy the IDEA requirements. Under the statute, a school

system's response to an administrative complaint must include:

> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
>
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
>
> (cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
>
> (dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I)(aa)-(dd).

DCPS' response includes none of these provisions. In addition, the standardized footnote portion of the response illustrates the school system's attitude towards this requirement. It states, "[i]t is this attorney-advisor's position that a DCPS response is not required in all IDEA Due Process hearings. Accordingly, DCPS objects to such an expansive reading and practice."[1] In Massey v. District of Columbia, 400 F. Supp 2d 66 (D.D.C. 2005), this court explicitly repudiated such a limited reading of the statute. That case explicitly stated that "DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA." Id. This Court rejects DCPS' position that it may make a response of its choosing despite clear statutory language and the explicit precedent to the contrary. Despite this Court's strong objection to DCPS' practice, default is not the appropriate measure in the case at hand.

Initially, it should be noted that the IDEA does not specify default as the penalty for failure to serve an appropriate response to a Due Process Complaint Notice. The purpose of the response requirement seeks to guarantee meaningful parental participation in the student

---

[1] DCPS' Response to Due Process Complaint Notice (R. at 139, D.B. exhibit 22)

placement process.² Throughout the ongoing process for D.B., plaintiff has attended IEP meetings, voiced concerns and contributed to the student's placement. Considering these factors, the hearing officer sought a full hearing to examine the available documents and to hear testimony of the parties. A default judgment would have subverted the administrative process and assigned D.B. a placement without a full examination of the record or his needs.

In denying plaintiff's motion for default judgment, the hearing officer explained that, "violations of IDEA's procedural requirements are actionable only if they affect a student's substantive rights." Lesesne v. District of Columbia, 447 F. 3d 828, 832 (D.C. Cir. 2006). The response of DCPS, while incomplete and not conforming with statute, does not rise to this level of harm. Plaintiff has failed to show that D.B. has suffered substantive injury due to DCPS' administrative failure in their form of response. See M.M. ex. rel. D.M. v. Sch. Dist., 303 F. 3d 523, 533-34 (4th Cir. 2002) ("If a disabled child received (or was offered) a free appropriate public education in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligation.").

 C.    DCPS' failure to provide access to school records

At the commencement of the hearing, plaintiff requested that the court find inferences based upon the DCPS' failure to produce the full record of D.B.'s report cards, progress reports, encounter tracking forms, and test results. Plaintiff contends that the denial of this information by DCPS created an unfair advantage for defendant and therefore enhanced the ability of the school system to win at the administrative level. The findings and amplifying comments of the

---

² See Blackman v. District of Columbia, 277 F. Supp. 2d 71, 78 (D.D.C. 2003) (Friedman, J.) (noting that "the procedural due process protections included by Congress in the IDEA are of critical importance to effectuating the goals of the statute") (citing Bd. of Ed. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176 (1982)).

hearing officer rejected plaintiff's contention and suggest that all factors, including the lack of documentation, were taken into account and thoughtfully considered prior to the issuance of the decision. (R. at 21.)

Of the three issues addressed, the hearing officer decided the first two, the appropriateness of D.B.'s IEP and his specialized instruction, in plaintiff's favor. The resolution of the third and final issue directed the parties to initiate an updated evaluation of D.B. in order to correctly place the student into an educational program most responsive to his needs. As noted in the order, the hearing officer recognized the lack of key documents and found for plaintiff on two of the three counts after consideration of all testimony and plaintiff's 27 exhibits.[3] Contrary to plaintiff's claim, the lack of documentation provided by DCPS aided the plaintiff's case. Based upon the hearing officer's notes, when the record appeared deficient or unsupportive, the hearing officer deferred to plaintiff's position. (R. at 21.) Therefore, DCPS' failure to provide all requested documents did not negatively effect plaintiff's position on the corresponding hearing officer's decision. See Lesesne, 447 F.3d at 834.[4]

**D.    Admitting hearsay testimony in violation of the Plaintiff's right to confront and cross examine witnesses**

Plaintiff argues that the hearing officer erred in his admission of Ms. Rabb's testimony as hearsay evidence at the administrative hearing. Plaintiff's claim ignores case law indicating the appropriateness and utilization of hearsay evidence in administrative findings. See Richardson v. Perales, 402 U.S. 389, 402 (1971) ("Upholding admissibility of and reliance by hearing examiner

---

[3] "The Hearing Officer takes administrative notice that there are no comparable tracking forms for the provision of specialized instruction." (R. at 21.)

[4] "[O]nly those procedural violation of IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable." (quoting C.M. v. Bd. of Educ., 128 Fed. Appx. 876, 881 (3d Cir. 2005) (per curiam).

on physician's hearsay report despite lack of cross-examination of the physician, where claimant did not exercise his right to subpoena the physician."); Souch v. Califano, 599 F.2d 577, 579-80 (4th Cir. 1979); Leitman v. McAusland, 934 F.2d 46, 51 (4th Cir. 1991).[5] Furthermore, the IDEA supports this precedent by not explicitly banning hearsay evidence from administrative proceedings held pursuant to the statute.

Testimony received from Ms. Robin Rabb, DCPS Special Education Coordinator of Kimball Elementary, provided appropriate information regarding IDEA implementation at Kimball. She supervised the completion of IEP evaluations, record maintenance, and the receipt of student services. Specifically, Ms. Rabb participated in every IEP that took place during D.B.'s tenure at Kimball.

In addition, plaintiff claims that the admission of hearsay evidence violated the statutory equivalent provision in IDEA of the Confrontation Clause stemming from the U.S. Constitution.[6] Plaintiff fails, however, to support her accusations with applicable case law. Plaintiff cites Idaho v. Wright, 497 U.S. 805, 814 (1990); (citing California v. Green, 399 U.S. 149, 155-56 (1970)); Bruton v. United States, 391 U.S. 123 (1968); Barber v. Page, 390 U.S. 719 (1968); and Pointer v. Texas, 380 U.S. 400, 407 (1965). These precedents fully support the necessity of the Confrontation Clause in a criminal case but fail to address, expand, or distinguish its applicability to the present administrative forum.

**E.    Failure to provide D.B. with necessary instruction**

---

[5] Hearsay alone may constitute "substantial evidence" supportive of a finding, but the finding of the ALJ should not rest solely on the hearsay testimony that does not have rational probative force.

[6] U.S. Const. amend VI. ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him*; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.") (emphasis added).

At both the August 23, 2006 due process hearing and upon the subsequent motion for summary judgment, plaintiff claims that DCPS failed to provide D.B. necessary instruction and services. The hearing officer clearly decided this issue for plaintiff. The Court concurs with the hearing officer's determination that DCPS failed to provide D.B. with a specialized instruction and related services from December 2004 through the end of the 2006 school year.

The hearing officer analyzed both testimony and documents in his examination. The contrary testimony between the Special Education Coordinator and the plaintiff and lack of documentation by the school system were both cited by the hearing officer in his finding for the plaintiff. DCPS' failure to produce the tracking forms designed to account for all of D.B.'s special education classes, proved fatal to their claims. Because the hearing officer previously analyzed this claim and decided in the favor of plaintiff, the issue is moot before this court.

F.      **Appropriate School Placement**

The past and ongoing question of appropriate school placement, necessitated the parties compliance with the orders of both hearing officers (dated August 23, 2006 and September 27, 2007). Both decisions mandated evaluations necessary to gauge D.B.'s educational needs. The August 23, 2006 finding ordered a psycho-educational evaluation to determine D.B.'s disability classification and recommended educational program. The two-session evaluation was completed on November 1, 2006.

The second administrative hearing took place on September 27, 2007. The hearing officer noted that the plaintiff rejected the June 12, 2007 IEP because it lacked an appropriate disability classification. Despite the data from Marshall Education Center stating that D.B. was progressing in the program, plaintiff continues to request a full-time placement for D.B. in a special education program. As a result, the hearing officer ordered a current and independent psychological

evaluation, an occupational therapy evaluation, and an opthamological evaluation. The order required DCPS to provide three possible dates for the IEP team meeting to plaintiff within ten days of their receipt of the evaluations. As of this date, the ordered evaluations have not taken place.

These evaluations and the subsequent IEP team meetings should provide conclusive data on which a placement for D.B. can be based. For the educational benefit of the student, the evaluation process should be expedited to the maximum extent possible. Any decision to move D.B. from his current placement should be deferred by the parties pending the timely completion of all ordered evaluations and the subsequent IEP team assessment.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that the plaintiff's claims as to the past school years are not supported by the record. The Court will therefore grant the defendant's motion for summary judgment as to these claims, and will enter judgment in favor of the defendants and dismiss these claims. As to school year 2007-2008, the court will determine these claims after the final administrative determination has been made.

A corresponding Order shall issue this date.

Signed by United States District Judge Royce C. Lamberth, October 31, 2007.